Miller v. The Mutual Benefit Life Insurance Co.

---

## MILLER v. THE MUTUAL BENEFIT LIFE INSURANCE CO.

1. Life insurance: NOTICE TO AGENT. Notice to an agent of a life insurance company having authority to solicit, make out and forward applications for insurance, to deliver to the assured policies when returned, and to collect and transmit premiums, will operate as notice to the company, and it will be bound by acts then done by him in respect to the business he is transacting.

2. —— ESTOPPEL: FALSE STATEMENT. An untrue or fraudulent statement on the part of the applicant, of a fact material to the risk, will not prevent a recovery against the company if it or its agent, authorized as above stated, was informed of and knew the truth in regard to such fact when it received the application and premium and issued the policy.

Miller v. The Mutual Benefit Life Insurance Co.

3. —— MATTERS OF WARRANTY AND REPRESENTATION. Matters of warranty constitute a part of the contract, and it is necessary that they should be exactly and literally complied with; but matters of representation are but collateral to the contract, and it is sufficient if they are substantially complied with. The distinction between warranties and representations pointed out by DAY, Ch. J.

4. —— Warranties will not be created nor extended by construction. They must arise from the fair interpretation and clear intendment of the language used.

5. —— NATURE OF APPLICATION. The application is, in itself, merely collateral to the contract of insurance, and its statements are to be classified and construed as representations, unless, by force of a reference in the policy, they are converted into warranties, and the purpose is clearly manifest, from the papers thus connected, that the whole shall form one entire contract.

6. —— In order to constitute words of reference, contained in an application, into a warranty, they must be such as, in legal effect, make it a part of the policy.

7. —— RULE APPLIED. In the present case, which was an action on a policy based on an application for insurance on the life of another, there were five separate papers connected with the application, viz.: one headed "particulars required from persons proposing to effect insurance on lives in this company;" another, "questions to be answered by the physician of the party applying for insurance;" another, "questions to be answered by the friend of the party applying for insurance;" another, "questions to be answered by the agent, if the applicant is not previously known to him;" and, lastly, one headed, "declaration to be made and signed by the person proposing to make insurance on the life of another." The policy contained the following reference: "It is understood and agreed by the assured to be the true intent and meaning hereof, that, if the declaration made by or for the assured, and upon the faith of which this agreement is made, shall be found in any respect untrue, then, and in such case, this policy shall be null and void." *Held,* that the statements contained in the *declaration* could alone be regarded as warranties, and that the statements of the person on whose life the insurance was effected were to be regarded as mere representations.

8. —— MATERIALITY OF REPRESENTATIONS: PROVINCE OF JURY. While it is within the proper province of the jury to determine whether the statements made in an application for insurance are substantially, or, in every material respect, true, it is not their province to

Miller v. The Mutual Benefit Life Insurance Co.

determine the materiality of alleged misstatements contained in such application.

9. —— EVIDENCE: MEDICAL TESTIMONY AS TO CAUSE OF DEATH. The opinion of a physician is competent evidence as to the cause of death of a person whose life is insured; but the weight of such opinion is a question for the jury.

10. —— FRAUD: STATEMENTS TO BE CONSIDERED. In determining the question of fraud regarding representations in respect to the health and habits of the person on whose life insurance was sought to be effected, not only the answers or statements of such person but those of his physician and of his friend should be considered by the jury.

11. —— INTEMPERANCE. Where a policy of life insurance was sought to be avoided on the ground that the death of the party, on whose life insurance was effected, was caused by intemperance, an instruction which charged that if the death of such person was only *contributed* to by the intemperate use of liquor, then the defense in that respect was not made out, was held not erroneous.

12. —— CONSTRUCTION OF POLICY. A policy of insurance will be strictly construed against the company.

13. Evidence: IMPEACHMENT ON MATTERS OF OPINION. An expert, who testifies as to matters of opinion, may be impeached by showing that he has affirmed a different opinion on a former occasion.

*Appeal from Delaware Circuit Court.*

WEDNESDAY, APRIL 5.

ON the 19th day of February, A. D. 1866, Mary L. Miller, through her husband, James A. Miller, made an application to the Mutual Benefit Life Insurance Company for a policy of insurance upon the life of her said husband, as follows, to wit: " I, Mary L. Miller, wife of James A. Miller, of Le Claire, in the county of Scott, in the State of Iowa, being desirous of effecting an assurance with the Mutual Benefit Life Insurance Company, in the sum of five thousand dollars, upon the life of James A. Miller, of Du-

buque, in the State of Iowa, the person described on the other side, during the whole continuance thereof, do hereby declare that the age of the said James A. Miller, next birthday, will be thirty-one years. That he does not, to the best of my knowledge and belief, practice any bad or vicious habits that tend to the shortening of life. * * * And I hereby agree that the answers of the said James A. Miller, and those of his physician and friend, shall be the basis of the contract between myself and the company; and if any untrue or fraudulent allegation is contained in those answers or in this declaration, all moneys which shall have been paid to the said company on account of the assurance made in consequence thereof shall be forfeited for the benefit of the company.

"Dated this 19th day of February, in the year of our Lord one thousand eight hundred and sixty-six.

"MARY L. MILLER,
"By JAMES A. MILLER."

Twenty-two printed interrogatories were propounded to James A. Miller, among which, with the answers thereto, were the following, to wit: "Name and residence of the party's usual medical attendant, or of the medical attendant of his family, to be referred to for information as to his health? Dr. Sprague, Dubuque, Iowa. Name and residence of an intimate friend, to be referred to for similar information? Charles J. Rogers, Esq., Dubuque, Iowa. Is the party sober and temperate? Yes. Has he always been so? Yes. Is the party aware that any untrue or fraudulent allegation made in effecting the proposed assurance will render the policy void, and that all payments of premiums made thereon will be forfeited? Yes."

Among the questions propounded to Charles J. Rogers, with the answers thereto, were the following, to wit: "Are his habits of life temperate? I think they are. Has he always been temperate? So far as I know." Among the

questions propounded to Dr. Sprague, with the answers thereto, are the following: "Is he sober and temperate? Cannot say. Has he always been so? So far as I know." Thornton, who was an agent of the company, sent Case, who was also the company's agent, to procure the answers of Rogers and Dr. Sprague to the interrogatories propounded to them. The testimony of Rogers, as to the interview between himself and Case, is as follows: "I looked over the questions I was requested to answer in the application, and when I saw the questions, 'Is he sober and temperate?' and 'Has he always been so?' I said to Mr. Case, that Mr. Miller was already insured in the Equitable, and I had advised him not to surrender his policy in that company, as it had been running for a number of years; and if this company was going to take a policy on his life, I wanted them to take him understandingly. So far as I was concerned, to the first question, 'Is he sober and temperate?' I could answer yes. I gave my reasons why I could so answer. I had got Mr. Miller a situation in my brother-in-law's bank upon the express promise that he would not drink any more; that he had been perfectly sober since he had been in the bank, and I trusted he would be so in the future. That in regard to the next question, 'Has he always been temperate?' I said I had known Mr. Miller for a period of ten years, and during that time he had not always been a man of sober and temperate habits, but had indulged in the use of intoxicating liquors; that if I answered that question at all, I should have to answer it conscientiously and say 'no.' To which he replied that it was a mere matter of form, and requested me to leave it blank. Therefore, I filled out the answers in the blanks to the other questions and signed my name. Thereupon Mr. Case took the application out of my office, and I never saw it afterward until it was introduced in evidence on the former trial of this cause. I never gave any body permission to fill the blank."

Miller v. The Mutual Benefit Life Insurance Co.

Case returned with the interrogatories to Thornton, and informed him "that Mr. Miller was not insurable on account of Mr. Rogers' statement that he had not always been temperate, and that Mr. Rogers had not filled the blank in answer to the question, 'Has he always been temperate?'" The answer, "So far as I know," to the interrogatory, "Has he always been so?" propounded to Rogers, is in the handwriting of Thornton. Thornton testifies that Rogers gave him permission to so fill it. Dr. Sprague also failed to answer the question, "Has he always been so!" and the evidence tends to prove that the answer thereto is in the handwriting of the agent, Thornton. There is *no evidence* that he had any authority from Sprague to so answer it.

Among the questions answered by S. M. Case, the agent, were the following: "Do you consider him, from the information you have, a fit person to be insured, and do you recommend him to the directors as such? Yes." In pursuance of these proceedings a policy of insurance upon the life of James A. Miller was issued, containing, among others, the following provisions, to wit: "*Provided always*, and it is hereby declared to be the true intent and meaning of this policy, and the same is accepted by the assured, upon these express conditions, that, in case the said James A. Miller shall * * * die by reason of intemperance from the use of intoxicating liquors, * * * this policy shall be void, null and of no effect. And it is also understood and agreed, by the within assured, to be the true intent and meaning hereof, that if the declaration made by or for the assured, and bearing date the 19th day of February, 1866, and upon the faith of which this agreement is made, shall be found in any respect untrue, then and in such case this policy shall be null and void." James A. Miller died on the 19th day of April, 1868. This suit was instituted in the Delaware circuit court for the recovery of the amount of the policy.

The answer admits the issuance of the policy, the death of James A. Miller, that he was the husband of plaintiff, and that plaintiff owns the policy, and avers that James A. Miller made false and fraudulent answers to the questions: "Is the party sober and temperate?" "Has he always been so?" And that James A. Miller died by reason of intemperance from the use of intoxicating liquors, whereby, it is alleged, the said policy became void.

The testimony established that Miller, for many years prior to the insurance, had been a man of very intemperate habits, and tended to prove that his death was occasioned by the intemperate use of intoxicating liquors. The cause was tried by a jury. Verdict and judgment for plaintiff for $5,000. Defendant appeals.

The further necessary facts appear in the opinion.

*Adams & Robinson* for the appellant.

*De Witt C. Cram* and *C. J. Rogers* for the appellee.

DAY, Ch. J. — I. The defendant requested the court to give the jury the following instruction, to wit: "It is pro-

1. LIFE INSU-  vided in the policy that it is the true intent
RANCE: notice
to agent.  and meaning thereof that if the declaration made by or for the assured, and bearing date the 19th day of February, 1866, shall be found in any respect untrue, then the policy should be void. If, therefore, you find said declaration in any respect materially untrue, your verdict must be for the defendant."

The court refused this instruction, and gave the following, to wit:

"An untrue or fraudulent statement, or denial made by the applicant of a fact material to the risk, to induce the issuance of a policy, will prevent the policy from taking effect as a valid contract, unless the insurer has in some way waived or estopped himself from relying upon such misstatement to avoid the policy."

Miller v. The Mutual Benefit Life Insurance Co.

"If an insurance company issues a policy upon a greater risk than an ordinary one, with a full knowledge of all the facts, it cannot escape the binding obligation of its contract by pleading such fact."

"If you find that James A. Miller made an untrue or fraudulent statement of a fact material to the risk, in the application for the policy, then you should find for the defendant, unless you further find that the defendant was informed of and knew the truth in regard to such fact, and after knowing such fact fully, received the application, the premium money and notes, and issued the policy; in which case you should find for the plaintiff."

"A full knowledge of the truth of the alleged misstatements of Miller in the application, communicated to Thornton and Case, or either, was a communication to the company."

The refusing to give the one, and the giving of the other instructions, the defendant assigns as error.

This assignment presents for our consideration this interesting question: "Is an insurance company, transacting business through an agent having authority to solicit, make out and forward applications for insurance, to deliver over policies when returned, and to collect and transmit premiums, affected by the knowledge acquired by such agent when engaged in procuring an application, and bound by his acts at such time done with respect thereto?" Upon this point there is much conflict in the decisions. In the case of *Vase* v. *Eagle Life and Health Insurance Co.*, 6 Cush. (Mass.) 42, it was held that, where an agent of a life insurance company, who was not authorized to agree for insurance, knew of the falsity of a material representation by an applicant, such knowledge would not prevent the company from insisting upon a discharge in consequence of the false representation.

The same doctrine was recognized in the case of *Smith* v. *Insurance Co.*, 24 Penn. St. 320. In *Mitchell et al.* v.

*Lycoming Mutual Insurance Co.*, 51 id. 102, it was held that an agent of an insurance company whose duty is to take surveys, receive applications for insurance, examine the circumstances of a loss, approve assignments and receive assessments, is not authorized to accept notice of other insurance or waive its consequences.

And the case of *Wilson* v. *Conway Fire Insurance Co.* does not stop with a recognition of the foregoing doctrines, but holds that an agent of an insurance company, empowered merely to receive written applications for insurance, to transmit them to the company, and, if they decide to take the risk, to receive the policy executed by them, and to issue it to the applicant upon receipt from him of the premium, is *not the agent* of the company for the making of applications; and if employed by the applicant, or permitted to act for him in drawing up the application, *is his agent*, for whose mistakes of fact committed in the statements or answers to interrogations in the application *he* is responsible. To the same purport see *Lowell* v. *Middlesex Mutual Fire Insurance Co.*, 8 Cush. 127; *Forbes* v. *Agawam Insurance Co.*, 9 id. 470; *Lee* v. *Howard Insurance Co.*, 3 Gray, 583.

In support of the converse doctrine see *Rowley* v. *Empire Insurance Company*, 36 N. Y. 550. In this case the plaintiff stated to the agent, verbally, the facts necessary to meet the requirements of the rules of the company, and, among other things, informed him that the premises were incumbered by mortgage. An application was signed in blank by plaintiff, and given to the agent, he promising to insert, over the signature thus obtained, the particulars thus furnished him, as a basis of the insurance, on his return to his residence. In filling up the application the agent inserted what was *not* the fact, and in violation of his instructions, that there was *no* incumbrance on the premises. It was held that he was the agent of the company in filling up the application, and that the company was bound by his acts.

In the case of *Masters* v. *Madison Co. Mutual Insurance Co.*, 11 Barb. 624, it was held that, although the by-laws of an insurance company make the person taking a survey in its behalf the agent of the applicant, still he is the agent of the company also, and it is bound by his acts.

In the case of *Septon* v. *Montgomery Co. Mutual Insurance Co.*, 9 Barb. 191, it was held that, when a policy of insurance requires that in case of any prior existing insurance upon the same property notice thereof shall be given to the company, notice to an agent authorized to make surveys and receive applications for insurance, and to receive the moneys paid by the assured, is sufficient, and that such notice need not be in writing. In the case of *McEwen* v. *The Montgomery Co. Mutual Insurance Co.*, 5 Hill, 101, it was held that notice to the traveling agent of the company, whose business was to solicit insurances, make surveys and receive applications, while actually engaged in preparing an application for a policy, was binding upon the company, although the notice never reached the company; and that notice to an agent, relating to business which he is authorized to transact, and while actually engaged in transacting it, will, *in general*, operate as notice to the principal. See, also, *Rowley* v. *Empire Insurance Co.*, 3 Keyes, 559, and *Anson* v. *The Winneshiek Insurance Co.*, 23 Iowa, 84.

To this latter view the judicial mind seems rapidly tending, and it is certainly more in accord with the enlightened and progressive spirit of the age. These companies select their own agents, require them to enter into bonds for the faithful discharge of their duties and send them forth provided with blanks and clothed with all the insignia of authority. If their ignorance or their cupidity leads them to recommend improper risks, it is more in consonance with reason that the loss should be borne by the company than that the assured should be made the victim of the incompetency or the avarice of the agents. More especially is this true in view of the fact that the company has the means

of indemnity through the bond of the agent. Just prin-
ciples of public policy require that these companies should
be held to a strict degree - of responsibility for the acts of
their agents. They will thus be led to the exercise of
greater circumspection in the selection of agents, and the
masses will, in part at least, be relieved from an annoying
importunity, which often leads them to procure policies,
without the full- concurrence of their judgments and in
opposition to their best interests.

The business of insurance is rapidly increasing in mag-
nitude and importance, and it is as essential to the com-
panies themselves as to the assured that the rules of law
declared applicable to them should be based upon just and
equitable principles, and administered in a manner in har-
mony with the doctrines of an enlightened jurisprudence.

It is quite time that the technical constructions which
have pertained with reference to contracts of this kind,
blocking the pathway to justice, and leading to decisions
opposed to the general sense of mankind, should be aban-
doned, and that these corporations, grown opulent from the
scanty savings of the indigent, should be held to the same
measure of responsibility as is exacted of individuals.

It follows that, in our opinion, the court did not err in
instructing the jury that the defendant was bound by
notice communicated to its agents.

II. The court gave the following instruction, to wit:
"The language of the policy does not make the statements
contained in the application for it matters of
warranty, but matters of representation." The
defendant excepted to this instruction and as-
signs the giving of it as error.

A warranty differs from a representation in two essential
aspects. First, a warranty constitutes a part of the con-
tract, and it is necessary that it should be exactly and
literally complied with; but a representation is collateral
to the contract, and it is sufficient if it be equitable and

substantially complied with. Second, in a case of a warranty the burden of proof is upon the party seeking indemnity to establish a case in all respects in conformity with the terms under which the risk was assumed; but in case of a representation the burden is cast upon the defendant to set forth and prove the collateral facts upon which he relies. 1 Phillips on Insurance, §§ 669, 754, and *Campbell* v. *New England Mutual Life Insurance Co.*, 98 Mass. 389, 390. In the case of *Daniels* v. *Hudson River Fire Insurance Co.*, 12 Cush. 416, SHAW, Ch. J., very clearly and forcibly illustrated the distinction between a warranty and a representation. He said: "The difference" (between a warranty and a representation) "is most essential. If any statement of fact, however unimportant it may have been regarded by both parties to the contract, is a warranty, and it happens to be untrue, it avoids the policy. If it be construed as a representation and is untrue it does not avoid the contract if not willful or if not material. To illustrate this, the application in answer to an interrogatory is this: "ashes are taken up and removed in iron hods," whereas it should turn out in evidence that ashes were taken up and removed in copper hods, perhaps a set recently purchased and unknown to the owner. If this was a warranty, the policy is gone; but if a representation it would not, we presume, affect the policy, because not willful or designed to deceive, but more especially because it would be utterly immaterial, and would not have influenced the mind of either party in making the contract or in fixing its terms." In the case of *Campbell* v. *New England Mutual Life Insurance Co.* it was said, that "when statements or engagements on the part of the insured are inserted, or referred to in the policy itself, it often becomes difficult to determine to which class they belong. If they appear on the face of the policy they do not necessarily become warranties. Their character will depend upon the form of expression used, the apparent purpose of the insertion, and

sometimes upon the connection, or relation to other parts of the instrument. If they are contained in a separate paper, referred to in such a manner as to make it a part of the contract, the same considerations of course will apply. * * * In considering the question whether a statement forming a part of the contract is a warranty, it must be borne in mind, as an established maxim, that warranties are not to be created nor extended by construction. They must arise, if at all, from the fair interpretation and clear intendment of the words used by the parties." Citing *Daniels* v. *Hudson River Ins. Co.*, 12 Cush. 416, 424; *Blood* v. *Howard Ins. Co.*, 12 id. 472; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend. 72; *Forbush* v. *Western Mass. Ins. Co.*, 4 Gray, 337, 340.

"The application is in itself collateral merely to the contract of insurance. Its statements, whether of facts or 5.——nature of application. agreements, belong to the class of *representations*. They are to be so construed, unless converted into warranties by force of a reference to them in the policy, and a clear purpose, manifest in the papers thus connected, that the whole shall form one entire contract. When the reference to the application is expressed to be for another purpose, or when no purpose is indicated, to make it part of the policy, it will not be so treated." *Campbell* v. *New England Mutual Life Ins. Co.*, 98 Mass. 391, 392; *Snyder* v. *Farmers' Ins. and Loan Co.*, 13 Wend. 92.

In the case of *Daniels* v. *Hudson River Fire Ins. Co.*, SHAW, Ch. J., having alluded to the fact that a warranty, however immaterial, if untrue, avoids the policy, uses this language: "Hence it is, we suppose, that the leaning of all courts is, to hold such a stipulation to be a representation rather than a warranty, in all cases where there is any room for construction, because such construction will, in general, best carry into effect the real intent and purpose which the parties have in view in making their contract." And the learned chief justice, in the same case, further

said: "If by any words of reference the stipulations in another instrument, such as the proposal or application, can be construed a warranty, it must be such as makes it in legal effect a part of the policy."

In the case of *Campbell* v. *New England Mutual Life Ins. Co.*, the defendant insisted, as in the present case, that certain statements were to be regarded as warranties, and the point decided in the case is so pertinent to the present inquiry, and the reasoning is so clear and forcible, that we feel justified in quoting further from it. The court said: " In every case cited in support of the defendant's position, there was an express reference in the policy, which made the application a part of the contract. The one most relied on, and claimed to be especially applicable to the facts of the present case, is that of *Miles* v. *Connecticut Ins. Co.*, 3 Gray, 580. In that case it was declared in the policy itself to be " expressly understood and agreed to be the true intent and meaning hereof, that if the proposal, answer and declaration made by the assured, and upon the faith of which this agreement is made, shall be found, in any respect, untrue, then and in such case this policy shall be null and void." In that proposal the assured declare (among other things) that the answers and statements therein made are correct and true, and " agree that the answers given to the following questions, and the accompanying statements, and this declaration, shall be the basis, and form part of the contract or policy between them and the said company." Two marked features in that case distinguish it from the present. First, the clause in the policy relates distinctly and exclusively to the paper called " the proposal and declaration." Second, when the two papers are thus brought together there is a distinct agreement not only that the statements are true and correct, but that they are to form a part of the contract. In the present case the policy contains no reference to any application, nor to any declaration or statement in writing, made or to be made by

the assured.   The only clause in the policy which can have any bearing upon the question, when disconnected from other provisions of a diverse character, reads as follows, namely: " Or if the statements made by or on behalf of, or with the knowledge of, the said assured to the company, as the basis of, or in the negotiation for, this contract, shall be found, in any respect, untrue, then, and in each of said cases, this policy shall be null and void."   It is clear that this is not a reference to any · particular instrument or paper, but it includes any and all statements, whether oral or written.   The defendant, however, contends, that a written application having been made in this case, which by its own terms declares the statements therein contained to be made " as the basis of" the insurance applied for, the policy will attach to that application as containing the statements referred to, and thus constitute an express warranty. We are far from being ready to concede that the reference is sufficiently definite to warrant the bringing of the two papers together for the purpose of giving a construction to the contract.   But, even if the application may properly be resorted to for aid in the construction, it contains no agreement and no words to indicate that its statements are to be taken as warranties, nor that they are to form part of the contract."

In the case at bar the proceedings with reference to the proceedings of the policy comprise five papers.   The one designated "A" is headed, " Particulars required from persons proposing to effect assurance on lives in this company."   That designated " B " is headed, " Questions to be answered by the physician of the party applying for insurance."   That designated " C " is headed, " Questions to be answered by the friend of the party applying for assurance."   That designated " D " is headed, " Questions to be answered by the agent, if the applicant is not previously known to him."   And the fifth is designated as follows: " Declaration to be made and signed by the person propos-

ing to make an assurance on the life of another." This last-mentioned paper is the one which appears first in the statement of facts, and is signed, "Mary L. Miller, by James A. Miller." To this reference is made in the policy as follows: "And it is also understood and agreed by the within assured to be the true intent and meaning hereof that if the declaration made by or for the assured, and bearing date the 19th day of February, 1866, and upon the faith of which this agreement is made, shall be found in any respect untrue, then and in such case this policy shall be null and void."

It is worthy of note that the *declaration* is referred to by name, and that to none of the other papers, each of which has a specific designation in the proceedings, is any reference made in the policy. In this respect it differs from the case of *Miles* v. *The Connecticut Insurance Co.*, before alluded to, in which the policy made direct reference to the *proposal, answer* and *declaration* made by the assured, and provided that if they were found in any respect untrue the policy should be null and void.

Applying the principles of the foregoing decisions to the present case it follows that the statements contained in the *declaration* can alone be regarded as warranties, and that the answers of Miller to the *questions* propounded to him are mere representations.

If the instruction of the court had reference to the answers to the printed interrogatories, it was proper. If it had reference to the *declaration* it was not error to the prejudice of appellant. The only alleged misstatement, of which complaint is made, is contained in the answer of Miller to the questions asked him. Hence it becomes quite immaterial what construction is placed upon the statements in the declaration.

As the court did not err in giving the foregoing instruction, it follows that the fourth instruction asked by defend-

ant, embodying a doctrine at variance with it, was properly refused.

In the case of *Henry Wilkinson* v. *The Connecticut Mutual Life Ins. Co.*, decided at the December term, 1870, it was said that, under the terms of the policy in that case, the answers to the questions contained in the application became warranties. That action was against the same company in which the decision of *Miles* v. *The Connecticut Ins. Co.*, 3 Gray, 580, was rendered, the policies of which, as we have seen, contain provisions differing widely from those now under consideration.

III. The court further instructed the jury as follows: " It is for you to determine the materiality of the alleged misstatements, if any have been proven." This instruction we consider erroneous. The only misstatements complained of are the answers of Miller to the following questions, to wit: " Is the party sober and temperate ?" " has he always been so ?" A misrepresentation by one party of a fact specifically inquired about by the other, though not material, will have the same effect in exonerating the latter from the contract as if the fact had been material, since, by making such inquiry, he implies that he considers it so. In all jurisprudence this distinction is recognized. It is particularly applicable to written answers to written inquiries, referred to in a policy. The rule is so because a party, in making a contract, has a right to the advantage of his own judgment of what is material, and if, by making specific inquiry, he implies that he considers a fact to be so, the other party is bound by it as such. 1 Phil. on Ins., § 342, and cases cited; also, *Campbell* v. *New England Mutual Life Insurance Co.*, 98 Mass. 401. Representations of this kind differ from warranties in that a substantial compliance with them is sufficient to answer their terms. Whether there has been such substantial compliance, that is, whether the representation is, in every material respect, true, is a question

*8. —— materiality of representations: province of jury.*

of fact for the jury. But it is not for the jury to say that the representation, though substantially untrue, is, notwithstanding, immaterial. An illustration will make plain the view of the court. Suppose that, in answer to a specific question, the assured states that his age is thirty years. It appears, from the evidence, that his age is a week or a month greater. The question would be a proper one for the jury to say whether the representation, though strictly and technically untrue, was not substantially and materially true. But suppose it appears, from the evidence, that the age of the assured is fifty, instead of thirty, years. It is not the province of the jury to say that the representation, though untrue, is immaterial. As is well said, in the case of *Campbell* v. *New England Mutual Life Insurance Co.*, it is not within the province of the jury, under the guise of determining whether the statements of the applicant were materially false or untrue in some particulars material to the risk, to find that diseases and infirmities were not material to be disclosed, which the parties had, by the form of the contract of insurance, and of the contemporaneous written application, conclusively agreed to consider material. See, also, *Davenport* v. *New England Insurance Co.*, 6 Cush. 341. We are aware that there are authorities which sustain the instruction of the court, but they seem not to have noticed the distinction here recognized, and are not, in our judgment, so much in accord with sound legal principles as those which support the converse doctrine.

IV. The defendant assigns as error the refusal of the court to give the following instruction, to wit: "The proper evidence of the cause of a disease is the testimony of medical men, whose practice has been such as to enable them to speak as experts. Upon this point you have the testimony of Dr. Staples, who attended Miller in his last sickness, and whose practice for fifteen years qualifies him to speak as an expert as to the cause of Miller's disease. If, therefore, you believe his

9. —— evidence: medical testimony.

opinion to be that the disease of which Miller died was caused by intemperance, from the use of intoxicating liquors — in other words, if you believe his opinion to be that Miller died of congestion of the lungs and brain, and that such congestion was caused by irritation of the stomach, and that the irritation was caused by the use of intoxicating liquors — and if you find that his testimony is uncontradicted, then his opinion must prevail."

Upon this branch of the case the court instructed as follows: "The opinion of a physician is competent evidence as to the cause of death." In this action of the court there was no error. There was no testimony contradicting Dr. Staples as to the cause of Miller's death, but there was *some* testimony tending to impeach him. However slight the effect of this testimony, and however little the consideration to which it was entitled from the jury, still its weight is to be determined by them.

It is not the province of the court by an instruction to withdraw any proper testimony from the jury. Had this instruction been given, its effect might have been to lead the jury to believe that, as there was no other testimony than that of Dr. Staples as to the cause of death, his opinion must prevail, without regard to the testimony introduced for the purpose of impeachment. The instruction given by the court contained the law as to the competency of the opinion of the doctor, and very properly left the weight of this opinion to be determined by the jury.

V. It is claimed that the court erred in giving the following instruction: "The defendant avers that there were

10. —— fraud: statements to be considered. certain untrue and fraudulent statements contained in the application by James A. Miller, and insists that only his statements in regard to his health and habits should be inquired into. But, as the contract was based upon the statements of the insured's physician and friend as well as his own, the statements of all three should be considered in determining the question of fraud."

This instruction is proper. The answers of the physician and friend constituted as much a part of the proceedings as those of Miller, and were equally entitled to the consideration of the jury.

VI. The giving of the following instruction is assigned as error: "If an insurance company issue a policy upon a risk greater than an ordinary one, with a full knowledge of all the facts, it cannot escape the binding obligation of its contract by pleading such fact, for this would simply be allowing insurers to commit a deliberate fraud upon the insured." The correctness of this instruction, as an abstract proposition, is conceded. It is said, however, that it assumes that the jury would be justified in finding, from the evidence, that the company had full knowledge that the risk was greater than an ordinary one.

We have before seen that the company is affected by the knowledge of its agents acquired when actively engaged in procuring the application for the policy. The defendant, however, insists, that there is nothing in the record which shows that either Case or Thornton had knowledge that Miller's habits had been intemperate.

We think that the testimony of Rogers, as set forth in the statement of this case, *tends* to establish this fact, and that the question of their knowledge was properly submitted to the jury.

VII. It is claimed that the court erred in instructing the jury as follows: "If you find that Miller's death was produced by other causes, then you should find for the plaintiff on this branch of the case. The policy must be construed strictly against the defendant, and if you find that Miller's death was only contributed to by the intemperate use of liquor, then you must find for the plaintiff on this branch of the case. In order to avoid the policy, the defendant must satisfy you, by a preponderance of evidence, that the sole or paramount cause of Miller's

death was caused by the intemperate use of intoxicating liquors." The defendant claims that "if intemperance shortens life, it is a cause of death within the meaning of the policy," and that the policy is thereby avoided. It rarely, if ever, happens, that the intemperate use of intoxicating drinks is indulged in for a considerable period without, to some extent, shortening life. The consequences of the construction contended for by the defendant would, therefore, be, that an insurance company which had assured the life of one known to be intemperate, and which had charged a higher rate of insurance in consequence of such fact, could exonerate itself from liability upon the policy by showing that the life of the assured had been shortened by intemperance. A sound principle does not lead to consequences so unjust and unreasonable. A proximate cause of an effect is that which immediately precedes and produces it, as distinguished from the *remote, mediate* or *predisposing* cause. When several causes contribute to death as a result, it may be extremely difficult to determine which was the remote and which the immediate cause, yet this difficulty does not change the fact that the death is to be attributed to the proximate and not the mediate cause. Nor is the difficulty in questions of this kind any greater than that which arises in questions of negligence, contributory negligence, and many others which are constantly the subjects of judicial investigation.

That the policy is to be construed strictly against the company see *Oatlin* v. *Springfield Fire Ins. Co.*, 1 Sumner's C. C. 434; *Wilson* v. *Conway Fire Ins. Co.*, 4 R. I. 142.

The instruction given, we think, correctly reflected the law.

VIII. The deposition of the plaintiff was introduced as follows: "Ten days before my husband died, and when Dr. 13. EVIDENCE: Staples was first called, he stated that my husimpeachment band had a severe attack of congestion of the on matters of opinion. lungs; on the day following he repeated this

same language, and stated that I need not be alarmed if my husband was delirious, as congestion of the brain usually accompanied congestion of the lungs; and continued to remark that my husband had done work enough to kill any ordinary man, or, perhaps, two men, and that he had no doubt injured himself by leaning against the desk."

The attention of Dr. Staples was directed, upon the cross-examination, to this conversation, and he stated that he thought he did not make the statements above detailed. The deposition was introduced for the purpose of impeachment.

It is claimed that the statements were mere matters of opinion, and that, with respect to them, the witness cannot be impeached.

The witness, as an expert, testified to matters of opinion, and may be impeached by showing that, upon a former occasion, he had expressed a different opinion. *Patchin* v. *Astor Mutual Ins, Co.*, 13 Kern. 268; *Sanderson* v. *Nashua*, 44 N. H. 492.

IX. Some objections were made upon the trial to the introduction of testimony, which may be briefly considered:

The evidence tending to show that Case and Thornton had knowledge that Miller's previous habits had been intemperate was proper for the reasons already considered. The evidence showing that the certificates of Rogers and Sprague, were incomplete when delivered to the agents, was competent for the same reasons. The receipt for premium signed by Thornton as " general agent," constituted a link in the chain of testimony tending to show the extent of Thornton's authority, and, although alone, it would not establish the extent of his agency, yet, as bearing upon that question, it was properly admitted, and even if erroneously admitted, it was, under the views herein expressed, error without prejudice.

X. The errors considered embrace substantially all those insisted upon in the argument. As the cause must be reversed for the error already noticed, it is not necessary to consider whether the verdict is sustained by sufficient testimony.

For the error of the court in submitting to the jury the materiality of the misstatements, alleged to exist in the answer of Miller, the judgment is

Reversed.