# THE HOME MUTUAL FIRE INSURANCE COMPANY
## *v.*
## ALBERT G. GARFIELD.

1. PLEA *waives a demurrer to the declaration.* Where a defendant demurs to the declaration and the demurrer is overruled, and he then pleads to the action, he waives the grounds of demurrer, and can not raise the legal questions presented by the demurrer. If he desired to do so, he should have abided by his demurrer.

2. INSURANCE—*policy—condition—notice—waiver.* Where an insurance policy contained a condition that if the interest in the real estate be less than a fee, the nature of the title must be stated, or the policy should be void, in answer to the question, what is the title, and is it incumbered by mortgage, etc., it was answered, a fee simple. There was a mortgage on the property to secure a loan of $10,000 to the person to whom the loss was, by the terms of the policy, made payable; but that fact was known to the agent and the vice president when the policy was issued, and the

---

agent of the company wrote the application: *Held*, that under such circumstances it would be a fraud to permit the company to escape liability on that ground. The assured had a fee simple title subject to an incumbrance, of which the officers were fully informed. There was not a concealment of the title. This case distinguished from the *Illinois Mutual Insurance Co.* v. *Marseilles Manufacturing Co.*, 1 Gilm. 236.

3. SAME—*re-building by the company*. Where the charter of an insurance company provided that settlement should be made, and a payment of the loss within three months, unless they, within that time, determined to re-build, and were authorized to do so in a convenient time, "provided they do not lay out and expend in such buildings or repairs more than the sum insured on the premises," and a loss occurs, and notice is served on the assured that the company had elected to re-build, but they failed to do so: *Held*, that by giving the notice, the contract was not changed to a contract to re-build, but the company, failing to re-build within a reasonable time, became liable to pay the amount of the insurance, with interest and a fair rental value of the ground while the owner is thus deprived of its use.

4. In such a case, it is error for the court to instruct the jury that the company was bound to re-build, "cost what it may," as they are restrained by their charter as to the amount that may be so expended.

APPEAL from the Superior Court of Cook county.

Messrs. SLEEPER & WHITON, for the appellant.

Mr. A. N. WATERMAN, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This is an action of covenant upon a policy of insurance, brought by the insured against the company. After the destruction of the property by fire, a notice to re-build was given, according to a clause contained in the policy.

The objections to the form of the action and the right of the plaintiff to sue, can not be availed of here. These were raised by demurrer in the court below, as the declaration sets forth at length the policy and the notice to re-build. This having been overruled, special pleas were filed. The appellant should have abided by his demurrer if he desired to present the questions raised by it to this court. *Russell* v. *Whiteside*, 4 Scam. 8 ; *American Express Co.* v. *Pinckney*, 29 Ill. 406.

Appellant is a mutual insurance company, and insured the property of appellee to the amount of $5000. The application and policy contain these words: "Loss, if any, payable to Wm. C. Reynolds, trustee, or order, as his interest may appear." By the policy, the company promised to pay the sum insured "within three months next after the property shall be burnt, destroyed or demolished by fire, and notice thereof given by the act during the time this policy shall remain in force, unless the directors shall, within said three months, determine to re-build or replace the property destroyed." In condition VII, annexed to the policy, and a part of it, it is declared that, "If the interest in the property to be insured be a leasehold interest, or other interest not absolute, it must be so stated in the policy, otherwise the same shall be void."

Section 14 of the charter is as follows: "The directors shall settle and pay all losses within three months after they shall have been notified as aforesaid, unless they shall judge it proper within that time to re-build the house or houses destroyed or repair the damages sustained, which they are empowered to do in a convenient time, *provided they do not lay out and expend in such buildings or repairs more than the sum insured on the premises,*" etc.

It further appears, that in reply to the question, "What is the title, and whether incumbered by mortgage or otherwise, and to what amount," the answer was, "Fee simple." The proof shows that, at the date of the policy, Reynolds held an incumbrance on the property to the amount of $10,000.

It is insisted that the fraudulent concealment of the title rendered the policy void. Campbell, an agent of the company, testified, substantially, that Reynolds called in the office and said he had been making a loan to Garfield; that Garfield had a policy but it was not satisfactory, and that he desired one in the Home Mutual, and requested him to make a survey of the building. He made the survey, and then consulted with the vice president, and wrote the application in the office of the company. Upon cross-examination, he said:

"The matter was all talked over between Reynolds and the vice president." From both the policy and outside information, the officers of the company had full knowledge of the loan and incumbrance. They knew that Reynolds wanted the insurance effected for the better security of the money he had loaned. They knew, from the policy itself, that there was an incumbrance. Proof of a fee simple estate, accompanied with these explanatory circumstances, would be a compliance with the seventh condition, attached to the policy. To permit the company to have the benefit of this stringent provision, with the evidence before us, would be to countenance the perpetration of a gross fraud.

The proof was, that the assured party, at the time of the insurance, had a fee simple title, subject to an incumbrance. This was mentioned in the policy. The company had notice of it, and should have made further inquiry or rejected the application. There was not a concealment of the true character of the title, and consequently no fraud practised. This is not like the case of the *Illinois Mutual Insurance Co.* v. *Marseilles Manufacturing Co.*, 1 Gilm. 236. In that case, the court said : "Neither of the policies, or the applications which are parts of the policies, express that the title of the defendants in error to the land was less than an estate in fee simple, or that the same was incumbered," and therefore they were properly declared void. In this case, the disclosure was sufficient when the policy informed the company that Reynolds had a lien upon the property.

In determining the meaning and effect of the answer as to the title to the property, we should consider the application and policy together. In this view, the answer to the question as to title and incumbrance was, "Fee simple, subject to the lien of Reynolds." We do not, therefore, think that the policy was void.

It is claimed that the suit was not instituted in proper time, under the charter of the company. We have examined the

stipulation of the parties, and do not think this defense can now be made.

All other questions raised may be resolved into one: What is the liability of the appellant? As authorized by the policy, a notice to re-build was given, and is as follows:

"ALBERT G. GARFIELD, ESQ., *Chicago*:

"Dear Sir: In conformity with the provisions of policy No. 5881 of the Home Mutual Fire Insurance Company of Illinois, you are hereby notified that the company elects to re-build the four story frame building formerly situated on the southwest corner of Franklin and Tyler streets, in the city of Chicago, and occupied as a tinware manufactory, being the same premises insured under the above described policy of insurance, and destroyed by fire on or about the 21st day of February, 1868.

"Every other right existing under the same policy of insurance is hereby expressly reserved. You are hereby requested to furnish, at the earliest practicable moment, plans and specifications of the construction of the building in accordance with the customs of insurance in such cases of loss adjustments.

Truly, yours,

April 24, 1868.                J. K. MURPHY,

Secretary."

It is assumed that this notice changed the policy—changed the entire character of the contract—and that, thereby, the company agreed to replace the property destroyed, without any reference to the amount of the cost.

It is urged that the policy is in the nature of an alternative contract, and the company, in giving the notice and making its election, made it an absolute contract to re-build, and having failed to re-build, became liable for all damages for breach of such contract. The policy is not in the alternative, to pay a sum of money or to re-build the house. The language is, "to pay the sum insured unless the directors shall determine to re-build." It is equivalent to saying, I will pay a sum

certain if I fail to re-build.   The company merely reserved the right to replace the property, to avoid the payment of the money.   Its liability was for the money, to be discharged by the performance of some other act.   This conduct on the part of the company in giving notice, should be looked upon with disfavor, unless good faith is manifested in all its subsequent proceedings.   Upon the notice to re-build, it should proceed immediately with the work.

It was error to instruct the jury that "the company was bound to re-build the building destroyed, *cost what it may.*" Section 14 must be construed as a limitation upon the company in the expenditure of money ; hence, the instruction announced an erroneous measure of damages.

This section must be interpreted with some regard to the language used, and the object in its adoption.   It restricted the extent of liability, and the notice could not render the company liable as assumed in the instruction.   The effect of giving the notice was not to change the contract so as to make it a mere contract to re-build.

What, then, was the effect of the notice ?   It hindered the assured in the enforcement of the policy ; it gave the company the right to take possession of the ground for the purpose of building.   If prompt measures are not adopted to re-build, what is the remedy of the assured, and what is the measure of damages ?   If the company neglected, within a reasonable time after notice, to carry out its evident intention, the assured might disregard it and sue upon the policy, and, with proper averments in the declaration, recover the amount of the policy and interest, and the rental value of the ground during the time of the delay thus caused by the act of the company.   The right to the latter, under the circumstances stated, would naturally result from the act of the company.

For the error in giving the instruction, the judgment is reversed and cause remanded.

*Judgment reversed.*