## POMEROY v. ROCKY MOUNTAIN INS. & SAV. INST.

A policy of life insurance contained a provision that if the insured should become so far intemperate as to impair his health, or induce *delirium tremens*, it should become void. The insured allowed the policy to become forfeited, but, being indebted to the plaintiff, he transferred it to him, and the plaintiff arranged with the president of the company for its revival, and paid the sums required to keep the policy in force until the insured's death, which happened shortly after the revival. The president of the company knew the habits of the deceased at the time of the revival, and that he had become so intemperate as to injure his health. *Held,* that the knowledge of the president must be regarded as the knowledge of the company; that the company was bound by his acts in permitting the revival or renewal of the policy, and that the plaintiff could recover under the policy. HELM, J., dissenting.

*Error to District Court of Arapahoe County.*

THE complaint in this case avers:

That the Rocky Mountain Insurance & Savings Institution is a corporation existing under and by virtue of the laws of the state of Colorado, and was such corporation on and prior to the 20th day of April, 1878; that on said day said corporation, being authorized by law to do a life insurance business in said state, and to write policies or certificates for that purpose, and issue the same, did, by B. F. Johnson, its president, and W. L. McCauley, its assistant secretary, they being duly authorized, issue under its corporate seal, a certificate, commonly called a "Policy of Insurance," called by said

corporation a "Certificate of Membership," setting forth that the said corporation, in consideration of $16 in hand paid, and of the semi-annual payment of $2.50, to be paid on or before the 20th days of October and April, at noon, of each and every year during the continuance of the said certificate, and also in consideration of the payment of the amount assessed within thirty days next after each and every notice of the death of a member of the life insurance department of said company should be sent, did thereby constitute Lintner J. Barton (who was the husband of the defendant Elizabeth Barton) a member of said company; and by the said certificate the said corporation did agree, in the event of the death of said member, well and truly to pay at its office, in Denver, the amount of assessments which might be collected to pay the death claim of the said member whose life was thereby insured, not to exceed the sum of $2,500, payable to his wife, Elizabeth M. Barton, for her use, benefit, etc., within three months after satisfactory proof of the death of said member, during the continuance of the said certificate; which agreement aforesaid was and is subject to certain conditions of forfeiture, among which are these: That if payment of the semi-annual premiums of $2.50 required to be made on the 20th days of October and April of each year, as above stated, should not be made according to the terms of the said policy or certificate, or if payment should not be made of assessments due on the death of a member of the life insurance department of said corporation as required by said policy, or if the member insured as aforesaid should become so far intemperate as to impair his health, or induce *delirium tremens*, then, and in any such case, the certificate should be void. And the said policy contained also this further provision: That, in case the same should be assigned, the assignment should be made on the back of the same, in conformity with the rules of the company, and a copy of the said assignment be delivered at the

office of the company, in Denver, immediately after its being made, and due proof of the interest of the assignee be produced with the proof of the claim, in case of death.'

And the plaintiff avers, on information and belief, that at the time of the issuing of said certificate or policy the said Lintner J. Barton in fact paid the sum of $16, and the said policy was delivered to him; that afterwards, and on or about the 22d day of October, 1878, the said Lintner J. Barton was in default as to his payments and dues on said policy or certificate, and the same became forfeited or was declared by said company to have become so; and he, the said Lintner J. Barton, was also indebted to the plaintiff at that time in a large amount of money, that is, the sum of $599.15, for which he had given his note, dated September 2, 1878, with interest at the rate of two per cent. per month until paid, and at the same time, to secure the same, had delivered to said plaintiff the aforesaid policy, which indebtedness the said defendant Elizabeth Barton had promised to pay to the plaintiff.

And the plaintiff avers that said Lintner J. Barton, on the 22d day of October, 1878, was also without means of paying what might be required to revive and keep in force the said policy or certificate; and the plaintiff further avers that in this condition said Lintner J. Barton applied to the plaintiff for assistance in the premises, and for further advances, and offered to indorse the said policy to plaintiff to secure him in so doing; that thereupon the plaintiff and said Lintner J. Barton applied at the office of said corporation, and to the said Johnson, who was the president and general manager of said corporation, with full power to write insurance and to represent the said corporation, and then and there stated to said Johnson that, in consideration of the indebtedness aforesaid, and advances to be made as aforesaid, and money to be paid by the plaintiff to revive the said policy, if the same could be done, the said policy was to be as-

signed to the plaintiff; that thereupon said Johnson, act-
ing as aforesaid, directed said Lintner J. Barton to make
upon the back of said policy an assignment of the same,
as follows:

"DENVER, October 22, 1878.

"For value received, I hereby assign and transfer to
Morris Pomeroy all of my right, title and interest in and
to the within policy of insurance, as security for money
borrowed.

"ELIZABETH M. BARTON, by her husband.
"L. J. BARTON, for himself."

Which assignment the said L. J. Barton made as
aforesaid, for the sole purpose aforesaid, in consideration
of which assignment, and the securing thereby of the ·
past indebtedness aforesaid, the plaintiff paid the dues
and assessments required to revive and keep in force said
policy, amounting to the sum of about $20, and received
the said policy of insurance aforesaid, and has since re-
tained the same, the said Johnson assuring the plaintiff
that said assignment was proper, and sufficient to trans-
fer the said policy to the plaintiff, and that, although
said policy has become forfeited, yet the same had been
revived for the purpose aforesaid, and stood as security
for the plaintiff as aforesaid; that from thence after-
wards, until the death of said Lintner J. Barton, the
plaintiff made the payments, from time to time, required
to keep said policy in force, amounting to the sum of
about $6.75; that the defendant Elizabeth M. Barton, as
the plaintiff is informed and believes, never had the pos-
session of the said policy, never paid anything to procure
the same, or to keep the same alive, and did not know of
its existence till after the death of said Lintner J. Barton,
or, if she did, she treated the same as the property of
said Lintner, and assented to his using it as his; that in
equity the same belonged to the said Lintner J. Barton
until after the transfer of the same to the plaintiff, and
now in equity belongs to the plaintiff, to the extent of

the indebtedness from said Lintner J. Barton to the plaintiff at the time of his death, including advances made, as aforesaid, with interest at the rate of two per cent. per month, as per agreement between said Lintner J. Barton and the plaintiff.

And plaintiff further avers that on or about the 8th day of March, 1879, said Lintner J. Barton died intestate and insolvent, leaving the defendant Elizabeth M. Barton, his widow, surviving him; that thereafter, and on or about the 8th day of May, 1879, proofs of said death, and of the plaintiff's interest in said policy, were made by the plaintiff, and accepted by said corporation; that the amount of such interest — that is, of the indebtedness from said deceased to the plaintiff — at that time amounted to the sum of about $555.30, all of which, with interest since that date, is due and unpaid.

And the plaintiff further avers that the said corporation [interlineation by plaintiff, as amended, as follows] "has been, since the death of said Lintner, requested by the plaintiff, as well as by the said Elizabeth M. Barton, to make the assessment upon its members required by its rules and regulations, for the death claim due by reason of the death of said Lintner J. Barton, and to pay over the said assessment, both of which said company refused to do; and has been also since said death" frequently requested to pay the amount due, according to the terms of said policy, but refused to pay the said sum of $2,500, or any part thereof, or any part of any assessment aforesaid; alleging, as a ground of such refusal, and as the only ground thereof, that said Barton, deceased, either died of *delirium tremens*, or became so far intemperate as to impair his health.

And the plaintiff avers, on information and belief, that said deceased did not die of *delirium tremens*, or become so far intemperate as to impair his health, after said policy or certificate was so renewed or revived, but the plaintiff avers that he was not aware of the existence of

the said clause regarding intemperance and *delirium tremens* until after the death of said deceased; that said Johnson, when acting on behalf of said corporation, knew the habits of said deceased, and that he was, at the time of the renewal or revival of said policy, intemperate and was likely to continue so; that his intemperance was such as to impair his health; and yet the said corporation permitted the said plaintiff to make payment to revive and renew said policy and extend the time of payment of the said indebtedness, and to make advances aforesaid on the faith of the renewal or revival and assignment of said policy or certificate as aforesaid, and continued thereafter to receive payment of dues and assessments on said policy from the plaintiff, and is estopped to say that intemperance impaired the health or caused the death of said deceased.

And the plaintiff further avers that he is informed and believes that said defendant Barton is claiming the money due from said corporation adversely to the plaintiff, as her own property; but which claim of the said defendant the plaintiff, on information and belief, avers to be false and illegal, and that in equity the plaintiff is entitled to the moneys aforesaid to the extent of the amount due from said deceased, at the time of his death, to the plaintiff, with interest as aforesaid.

Wherefore the plaintiff seeks the equitable interposition and assistance of the court herein, that the said defendants may be summoned and required to answer the premises, and all and singular the matters and things herein contained; and demands judgment against the said corporation for the said sum of $2,500; and that out of whatever sum may be recovered, as aforesaid, the amount of indebtedness owing from said deceased to the plaintiff at the time of his death may be first paid, and the residue thereof only paid to the said defendant Barton, and that plaintiff recover costs.

Demurrer, *inter alia*, "that said complaint does not

state facts sufficient to constitute a cause of action." De-
murrer sustained and judgment for defendant.

Messrs. STUART BROS., for plaintiff in error.

Messrs. B. F. HARRINGTON and W. W. COVER, for
defendant in error.

ELBERT, J.   Johnson was the president and general
manager of the defendant company, and had charge of
its home office, at Denver, with full power to write insur-
ance and to represent the company.   The company is
bound by his acts in issuing the policy of insurance, in
permitting its renewal and assignment, and in receiving
the back dues necessary to its renewal, and the pre-
miums thereafter becoming due.   Bliss, Life Ins. §278;
Whart. Ag. § 202; Wood, Fire Ins. §§ 383, 391.   His
knowledge touching the condition of health of the
insured must be regarded as the knowledge of the com-
pany.   Story, Ag. § 140; Bliss, Life Ins. § 76 *et seq.*;
Ang. & A. Corp. § 305; Whart. Ag. § 184.

Johnson having permitted the renewal of the policy,
and its assignment, with full knowledge of Barton's im-
paired health by reason of his intemperate habits, and
with full knowledge that the plaintiff renewed and took an
assignment of the policy as a security for advances al-
ready made, and thereafter to be made, having at the
time received from the plaintiff payment of all back dues
necessary to its renewal, and thereafter payment of the
premiums on the policy as they became due, is to be re-
garded as having waived the condition respecting the im-
pairment of health of the insured by intemperate habits.
The company cannot be allowed to treat the contract as
valid for the purpose of collecting dues, and as void when
it comes to paying the insurance; or, as otherwise stated,
"the company cannot be permitted to occupy the van-
tage ground of retaining the premium if the party
continued in life, and repudiating it if he died."   *Insur-*

*ance Co. v. McCain,* 96 U. S. 84; *Home Ins. Co. v. Duke,* 84 Ind. 253; *Brandup v. St. Paul F. & M. Ins. Co.* 27 Minn. 393; *Alkan v. New Hampshire Ins. Co.* 53 Wis. 136; *Frost v. Saratoga Mut. Ins. Co.* 5 Denio, 154; *American Cent. Ins. Co. v. McLanathan,* 11 Kan. 533; *Miller v. Mutual Ben. Life Ins. Co.* 31 Iowa, 216; *Williams v. Niagara Fire Ins. Co.* 50 Iowa, 561; *Bevin v. Connecticut Mut. Life Ins. Co.* 23 Conn. 244; *Home Mut. F. Ins. Co. v. Garfield,* 60 Ill. 124; *Reaper City Ins. Co. v. Jones,* 62 Ill. 458; *Lycoming Ins. Co. v. Barringer,* 73 Ill. 230; *Peoria M. & F. Ins. Co. v. Hall,* 12 Mich. 202; *Short v. Home Ins. Co.* 90 N. Y. 16; *Bennett v. North B. Ins. Co.* 81 N. Y. 273; *Whited v. Germania F. Ins. Co.* 76 N. Y. 415; *Buckbee v. United States Ins. Co.* 18 Barb. 541; *Putnam v. Commonwealth Ins. Co.* 18 Blatchf. 368 (U. S. C. C.); Bliss, Life Ins. § 278 *et seq.,* and cases there cited; Wood, Fire Ins. "Waiver," ch. 20; "Estoppel," ch. 21, and cases there cited.

If there was collusion between the plaintiff and Johnson, the president, to defraud the defendant company, it is matter of defense, to be pleaded.

While it appears from the complaint, generally, that the defendant company is a mutual company, we are not prepared to admit the proposition that that fact necessarily takes the case without the operation of any of the rules which we have stated. Theoretically, the insured in mutual companies are members of the company, but immunity from the above rules would not follow from that relation alone. The charter and by-laws of the company are not before us, nor are we advised that they prescribe any form of policy or limitation upon the powers and duties of the general officers and agents of the company that would exempt the company from liability in this case. As the record stands, the question made by counsel in this behalf is not fairly presented, and we intimate no opinion respecting it.

The court erred in sustaining the demurrer to the com-

plaint. The judgment must be reversed, and the case remanded.

HELM, J. (*dissenting*). Construing the averments of the complaint filed in this case, under established principles of law and rules of pleading, I am of the opinion that plaintiff ought not to recover upon them. To my mind the complaint must be regarded as showing that when plaintiff procured the renewal of the policy he had knowledge of Barton's impaired physical condition, and that such impairment was the result of intemperance. Having been in no way deceived, misled or imposed upon, he cannot be heard to say that he was ignorant of the clause in the policy avoiding the contract upon this ground. The legal inference from the averment made on the subject is that the death of Barton, ten weeks after the policy was renewed, resulted from Barton's impaired health and intemperate habits, existing at the time of such renewal.

If these conclusions be legitimately drawn, they show an attempt on the part of plaintiff to indemnify himself through a policy of insurance which he must be held to have known ought not to issue. The fact that Johnson had knowledge of the assured's impaired physical condition, coupled with the principle that insurance companies are bound by the knowledge of their officers and agents, does not answer my objection. Assuming that no distinction should be made between the mutual and the old line companies in this respect, I do not believe that Johnson's knowledge amounted to a waiver of the condition in question. In the first place this is not a case where the waiver of a condition in the contract *subsequent to its execution* is claimed to have occurred. On the contrary, reliance is placed upon the proposition that the condition, though inserted by the parties, was waived at the *inception* of the contract. And, secondly, the doctrine of waiver, predicated upon the knowledge of offi-

cers or agents, is recognized for the purpose of protecting *innocent third persons* dealing with insurance companies. It ought to have no application where the other contracting party is acting in bad faith. The law does not wholly ignore the rights and interests of innocent members and stockholders in these corporations; and I take it that, if an officer or agent and an outside party conspire to perpetrate a fraud upon the company, the courts will not lend their aid to its consummation. The fraud appearing in this case upon the face of the complaint, it was unnecessary, in my judgment, to plead it by answer. The demurrer sufficiently presented the issue. I do not say that, in fact, plaintiff actually intended to perpetrate a fraud upon the company. He may have been ignorant of the intemperance clause in the policy, as he asserts. He may also have been ignorant of the fact that insurance companies do not knowingly accept risks upon parties who are so low with disease that death is only a question of a few days or weeks at the utmost. What I assert is that the law, under the facts disclosed by his complaint, does not permit him to plead or rely upon his ignorance in these respects.

For the foregoing reasons I feel constrained to dissent from the conclusion reached by a majority of the court.

I think the judgment of the district court should be affirmed.

*Reversed.*