## ANSON et al. v. THE WINNESHEIK INS. CO.

1. **Insurance:** POLICY FOR HEIRS ISSUED IN NAME OF ANCESTOR. The fact that a policy of insurance upon property belonging to and for the benefit of certain heirs, is issued in the name of the deceased person from whom they inherited the property, will not, of itself, vitiate the policy or defeat a recovery thereon, where the application upon which the policy is based was thus made out by a special agent therefor, with full knowledge of the facts.

2. —— MISSTATEMENT AS TO INCUMBRANCES. An application for insurance taken by an agent who was authorized to act for his company in making out and filling up applications, erroneously stated that there was no incumbrance on the property, when in fact there was. In a few days after the application was forwarded to the company, and before the policy was received by the assured, he met the agent and notified him of the mistake, whereupon the agent, on the same day, wrote the company notifying it. *Held*, that the right of recovery by the assured was not defeated.

    *Argu.* 1. ESTOPPEL. If the company received information of the incumbrance *before* it forwarded the policy, it became an amendment or correction of the application: if it did not until *after*, then it should have returned the premium note; and having failed in this, it is doubtful whether it can urge the error.

    *Argu.* 2. AGENCY. The agent being authorized by the company to act for it in making and filling up applications, is not to be regarded in this respect as the agent of the applicant alone, but of the company also; and notice to him in regard to matters within the scope of his authority would be notice to the company.

3. —— SPECIAL AGENT: CASE DISTINGUISHED. But if the local agent of the company has, in fact, no power except to take and forward applications, and was not the agent of the company, but of the

applicant, then the rule stated in the case of *Ayers* v. *The Hartford Ins. Co.* (17 Iowa, 176), which is distinguished from the present one, would apply.

### *Appeal from Tama District Court.*

### WEDNESDAY, JULY 31.

ACTION on a policy of insurance. Trial to the Court. Judgment for defendant, and plaintiffs appeal.

*Boardman & Brown* for the appellants.

*Bradley & Caswell* for the appellee.

COLE, J. — The defendant is a foreign corporation located at Freeport, Illinois. Upon the facts as found by the court, but two questions are presented for our determination. *First.* The house insured was situated on, and a part of, the real estate formerly owned by Jane Anson, deceased, who died some time before the application for the policy in suit. Jane Anson was the wife of the plaintiff, Milo F., and the mother of the other plaintiffs. The policy makes the application a warranty by the assured. The agent who took the application, and the extent of whose authority does not appear to have been known to plaintiffs, by his commission from defendant, " was authorized to receive applications for insurance, in accordance with the *instructions* to agents, and to collect and transmit the premiums therefor."

*1. INSURANCE: policy for heirs issued in name of ancestor.*

The " instructions " contain eighty pages of printed matter; one heading of a subdivision thereof, in prominent and heavy type, is as follows: " RULES TO GOVERN AGENTS IN FILLING UP BLANK APPLICATIONS. It is of the greatest importance that applications for insurance should

be made out correctly, stating every thing essential, clearly and tersely, and to this end you are furnished with blanks by this company, which, by close attention to the following rules, *you cannot fail to make perfect.*" The agent was introduced as a witness, by the defendant, and testified: "I filled out the writing in the application *as agent of the Winnesheik Insurance company.*"

He also testifies, that he knew Jane Anson was dead, and that it was talked of at the time, and that he "told plaintiff, that the property would have to be insured in her name by plaintiff as her agent."

It also appears from the evidence, that at the time of the making of the application, the defendant had not filed the statements and obtained the certificate of the auditor of State, authorizing the defendant to do business in this State as provided in Revision, section 1750, *et seq.* About one month after the policy in suit was obtained, the certificate of the auditor of State was filed in the clerk's office of Marshall county, where the property was situated and the agent resided. This certificate, among other matters, stated that the agent who took the application for the policy in suit, "had been duly appointed by said company their lawful agent for Marshall county, *with full power to take risks of insurance therein.*"

In view of this proof, we hold that the fact of making the application and issuing the policy in the name of Jane Anson, will not, of itself, defeat a recovery by the plaintiffs upon the policy, the plaintiffs being the heirs of Jane Anson deceased, and the owners of the property at the date of the application, policy and loss. *Ayres* v. *The Hartford Fire Ins. Co.*, 17 Iowa, 176; *Plumb* v. *Cattaraugus Co. Fire Ins. Co.*, 18 N. Y. 392; *Campbell* v. *M. & F. Fire Ins. Co.*, 37 N. H. 35; *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10.

*Second.* The application stated that there was no lien

or incumbrance on the property. In point of fact, there was an incumbrance. The agent, who was sworn as a witness for the defendant, testified that a few days after he took the application, he met the plaintiff Anson, who told him that he had made a mistake in saying there was no incumbrance on the property, and then stated what it was.

*2. — misstatement as to incumbrances.*

This was two or three days before the policy was received by the plaintiff. The agent further testified that on the same day he wrote the defendant notifying it of the incumbrance. This letter was mailed at Marshalltown, and would go by way of Dixon to Freeport, Ill., all the way by railroad.

If the defendant received the information before it forwarded the policy, it became an amendment or correction of the application in that particular, and made it true in fact. If it did not receive the information until after it forwarded the policy, the defendant should then have returned the premium note, and demanded a surrender of the policy. Not having done so, it is at least questionable whether it can now avail itself of the mistake, to defeat a recovery. *Frost* v. *Saratoga Mu. Ins. Co.*, 5 Denio, 154 ; *Ames* v. *N. Y. Ins. Co.*, 14 N. Y., 253.

*Argu. 1.*
*ESTOPPEL.*

But let this latter proposition be as it may, the fair preponderance of the testimony shows the fact to be that the agent of the company at Marshalltown was authorized by the company to act for it, in making out and filling up applications ; and therefore he is not to be regarded in this respect as alone the agent of the applicant.

*Argu. 2.*
*AGENT.*

If he is in respect to applications the agent of the company, and not solely the agent of the applicant, then notice to the agent with regard to matters within the scope of his authority, would, on well known principles,

be also notice to the company. In this respect the case is different from and does not fall within the rule stated in *Ayres* v. *The Hartford Fire Ins. Co.* (*supra*).

If the local agent of the defendant had in fact no power except to take and forward applications, if in taking applications he was not the agent of the company, but of the applicant, then the rules stated in the case last referred to would apply. *Jenning* v. *Ins. Co.*, 2 Denio, 75; *Barret* v. *Ins. Co.*, 7 Cush. 175; *Jenkins* v. *Ins. Co.*, 7 Gray, 370; *Wilson* v. *Ins. Co.*, 4 Rh. Is. 141; *Chaffee* v. *Ins. Co.*, 18 N. Y. 376; Id. 385; Id. 392; *Chase* v. *Insurance Co.*, 20 Id. 52.

*3. ——*
*special agent:*
*case distin-*
*guished.*

The District Court, in effect, held that the fact that Jane Anson was dead when the policy was issued, and the false statement in the application as to the incumbrance, notwithstanding the correction, avoided the policy and plaintiffs could not recover. This was error; and, without examining the other questions made by the pleadings and not passed upon by the District Court, we must, for the causes before stated, order the judgment

Reversed.

JULY 22, 1868.

A petition for a rehearing was filed in this case by the defendant's counsel, a rehearing was granted, and the cause has been again fully argued. Although the court is now differently constituted than when the foregoing opinion was announced, the then chief justice having retired, and Mr. Justice BECK having been elected as his successor, yet we find ourselves fully agreed in the opinion as heretofore announced.

Much of the stress of the re-argument by the defendant's counsel is upon the limited character of the agent

who received the application, and in an effort to bring
this case within the rule as laid down in *Ayers* v. *Hart-
ford Ins. Co.* (17 Iowa, 176). This case, however, falls
more nearly, and indeed completely, within the rule as
laid down in *Plumb* v. *Cattaraugus County Mu. Ins.
Co.* (18 N. Y. 392), and the very recent case following
and enforcing it, of *Rowley* v. *The Empire Ins. Co.* (36
N. Y. 550).

While it may be true that the agent who received the
application for the policy now in suit, was but a solicit-
ing agent, and had no authority to issue the policy, yet it
will be remembered that while he was in the discharge
of the special duty of his limited agency, to wit, *taking
the application*, he, with a full knowledge of all the facts
and of the death of Jane Anson, and that the property
had descended to these plaintiffs, directed, as the agent
of defendant, and as such agent actually made, the appli-
cation in the name of Jane Anson. He was the agent
of the defendant. This is not controverted. *When* and
for *what purpose* was he the defendant's agent? We
answer, he was the agent *when he was taking the appli-
cation*, and he was the agent for the purpose of taking
*the application*. Hence, when he was acting as the agent
of defendant, and while discharging the special duty of
his agency, he represented to plaintiffs that, in order to
properly discharge his agency, that is to take the applica-
tion according to his instructions, it must be taken in the
name of Jane Anson. He was acting within the scope
of his agency when he made the application as it was
made, and upon the plainest principles of law applicable
to principal and agent the defendant is concluded by it.
It is the same as if the defendant had, upon its own
special request, taken the application in the name of, and
issued the policy to, Jane Anson, for the benefit of the
plaintiffs. They are estopped from setting up her death

as a reason for avoiding the policy. The doctrine of estoppel has a pertinent and equitable application in such cases. *Plumb* v. *Cattaraugus Co. Mu. Ins. Co., supra; Rowley* v. *The Empire Ins. Co., supra.*

In the case of *Ayres* v. *The Hartford Fire Ins. Co.* (*supra*), it was sought to bind the insurance company by knowledge communicated incidentally to the agent (who was only authorized to receive or take the application) long after the policy was issued. Certainly the doctrine of that case can have no just application to this.

It may well be questioned whether in any case it ought to be *held* that an insurance company may commission an agent to go out into the community in search of victims obligating themselves to the company through the agent, while the agent is incapable of being the medium through which the company is obligated to them. It is, to say the least of it, unfair, and many of the wrongs which courts of justice are made to effectuate are superinduced by the apparent judicial sanction to that unfair and inequitable method of doing business. Whether the wrongs perpetrated under it may not compel courts of justice to wholly deny its legality, we need not now further inquire. The case of this defendant is not within any rule heretofore laid down which will exempt it from liability.