AMERICAN CENTRAL INS. CO. v. H. L. S. McLANATHAN.

1. DESCRIPTION OF REAL ESTATE; *Error in Instrument; Uncertainty.* Where, in the description of real estate there are found repugnant calls, the instrument is not void for uncertainty, nor is there any need of reforming it, provided it clearly appears either from the face of the instrument or extrinsic facts which is the true and which the false description.

2. CONTRACT OF INSURANCE; *Waiver by Agent, binds Company.* An agent of an insurance company, authorized to issue policies of insurance and consummate the contract, binds his principal by any act, agreement, representation or waiver within the ordinary scope and limit of insurance business, which is not known by the assured to be outside the authority granted to the agent.

3. INTEREST OF ASSURED; *Object of Stating.* A stipulation in a fire insurance policy, that the nature of the assured's interest if less than an absolute ownership must be stated, is one for the benefit of the insurer, and may be waived by him.

4. ———— *Statement of Interest may be Waived by Agent.* When a policy is issued upon simply a verbal application, and after it has been prepared and is ready for delivery the assured informs the insurer of the exact condition of his title and interest, which is less than an absolute ownership, and is told by the insurer that the policy is all right as it is, and that it will make no difference, and on the strength thereof pays his premium and receives the policy, *held*, that the insurer cannot thereafter insist as a defense to an action on the policy that the true nature of the assured's interest was not stated.

5. OFFER TO REPAIR, *Operates as a Waiver.* An election to repair, with full knowledge of all the facts, is a waiver of an omission to state in the policy the true nature and extent of the assured's interest.

6. HUSBAND'S INTEREST *in Wife's Property.* When a husband erects a dwelling on his wife's lots, and with her occupies it as a mutual homestead, and as her agent effects an insurance for their mutual benefit, though in his own name, and the insurer, aware of these facts, issues the

11 533
41 163
41 527

11 533
43 259
43 504

11 533
44 735

11 533
47 5

11 533
49 193
50 349

11 533
52 493

11 533
57 616

11 533
58 89

11 533
64 345

11 533
70 188

11 533
80 132

11 533
81 728

policy and receives the premium, *held*, that the husband may recover on the policy in case of loss, by an action in his own name.

7. PLEADING; *Petition; Reply; Departure.* When in an action on a fire insurance policy the petition alleges the contract, the fire, and the amount of loss, but does not in terms allege the nature and extent of the assured's interest in the property burned, and the answer as matter of defense avers that the property destroyed belonged to a party other than the plaintiff, and also that the policy was void because of a failure to state the assured's interest, *held*, that a reply which merely stated the true nature of the plaintiff's interest, and facts which estopped the insurer from taking advantage of the omission in the policy of such statement, should not be treated as a departure from the petition.

8. DAMAGES FROM EXPOSURE, *after the Fire.* When an insurance company, after a loss, elects to repair, and then after some delay finally refuses to repair, it is liable for the damages resulting from the exposure to the weather during such delay.

*Error from Leavenworth District Court.*

ACTION by *McLanathan* on a policy of insurance, to recover for damages sustained by fire, and by reason of exposure of property subsequent to the fire. The action was tried at the September Term 1872. Verdict and judgment for the plaintiff, and the *Insurance Company* brings the case here on error. The special verdict (which is a full statement of the facts) is copied in full in the opinion, *infra;* and the opinion also contains a statement of the substance of the pleadings.

*Clough & Wheat,* for plaintiff in error:

1. The policy sued on is void. The description of the property is repugnant and uncertain. It locates the dwelling-house insured on the southwest corner of Second and Vine streets, and the house there situate has not been injured by fire. Said streets, Second and Vine, as natural objects, control the location of the property insured, (3 Washb. on Real Prop., 353, par. 45,) and therefore the company was entitled to judgment. We suppose that neither the matter about the mistake mentioned in the 11th finding, because not plead, nor the matter in the reply, can be relied on by McL., because of the same being matter of departure from the petition: (29

Ind., 587, 592; 15 Minn., 480;) and because location of property given in a written instrument cannot be charged in the manner sought by McLanathan: 10 Metc., 211.

2. All persons having a claim under said policy were required to proceed at once, and to give immediate notice to the company or its agent. The only written notice given was delivered to the company on the 7th of March 1872, which was more than a month after the fire. This was not sufficient, and for want of proper notice the insurance company was entitled to a verdict and judgment. The notice by the company's agent of February 28th, that the company elected to repair the building, is not a sufficient consideration to render the company liable on the policy, nor could such notice operate either as a waiver of the notice of loss, or as an acknowledgment thereof: 29 Penn. St., 198; 43 N. H., 621; 12 Wend., 452; 1 Hoffman's Ch., 172; 89 Eng. C. L. R., 257; 11 Missouri, 278; 5 Nevada, 268; 45 Maine, 307; 1 Allen, 297; 18 Wis., 387.

3. By the policy the company had the right to repair the property damaged on giving notice of such intention within thirty days after receipt of the proofs required by the policy. It is not pretended that any such proof was given, except as shown to have been given on the 7th of March. By the answer the company denied all the allegations of the petition except such as were thereinafter admitted; and the only allegation contained in the petition admitted by the answer, material in this connection, is the allegation that the company made the policy sued on; and we do not understand the verdict as finding that the company and McLanathan made any new contract after the execution of the policy, or that McLanathan agreed with the company to accept, act upon, or comply with the notice set forth in the 6th finding. The delivery of that paper did not constitute a contract. McLanathan is not found to have agreed to comply therewith; and as such matter to be binding on either party must be binding on both, the giving of that notice amounted to nothing: 4 Kas., 385; 6 Kas., 256, 272; 18 Barb., 317; 4 Johns., 235; 17 Iowa,

492; 7 Watts, 48; 32 N. J., 504, 510; 21 Wend., 138; 1 Caines, 583; Chitty on Con., 9, note 2; 13 Ohio St., 324. Further, that notice was given on the 28th of February, eight days before delivery of proofs. The company had 30 days after receipt of the proofs in which to determine whether it would or would not repair.

It appears that McLanathan on the 4th of March moved the foundation of the kitchen attached to the house burnt. This he did between the time when the notice mentioned in the 6th finding was given and the time when McLanathan delivered the proof of loss mentioned in the 7th finding. By so doing McLanathan prevented himself from relying on or taking advantage of that notice, as by so moving said foundation, McLanathan prevented the company from repairing, as the company claimed he did in its answer; 36 N. Y., 522. If it shall be claimed that the company agreed to such removal or consented thereto, or if McLanathan shall seek to rely on that part of said 10th finding, which is to the effect that the company agreed to such removal, then we draw attention to his reply, where McLanathan denied the allegations in the answer about the removal of that foundation, and did not allege or pretend in any pleading, that the company agreed or consented to such removal. It would not be consonant with the principles of the code (§ 84,) or common justice, to permit McLanathan to rely on a finding which in effect includes the exact opposite of his pleading. So much of said 10th finding as is in relation to any supposed agreement, should be disregarded, as being a nullity.

4. If the interest of McLanathan was not one of absolute ownership, then as the nature of any interest was not clearly or otherwise defined in writing on said policy, the policy was void. The company in its answer alleged that the interest of McLanathan in the property insured was not one of absolute ownership, and the company plead that McLanathan did not at any of the times mentioned in the petition have, or own any interest in the property insured, and that some other person was the owner thereof, and the company alleged

that Lucy B. McLanathan was the owner of the dwelling house that was damaged by fire, and of the lots on which the same was situate, and that McLanathan did not himself have any interest therein other than such as he had as the husband of said Lucy. By his reply, McLanathan admitted that the title to the lots at the southwest corner of Second and Elm streets was in his wife. We submit that because of said wife being such owner of the property burnt, the policy was void, and that McLanathan cannot recover.

In his reply McLanathan sought to avoid the effect of that matter of ownership, and claims that because the agent had the conversation and knowledge mentioned in the 2d and 3d findings, and because of the matter mentioned in the 4th finding, the company is estopped from relying on want of absolute ownership in McLanathan. McLanathan commenced his action on the policy as it was. He did not in his petition seek to have it altered or changed, but declared on it according to its very terms, with all its conditions, specifications and requirements, and, therefore, we submit it was not competent for him to seek a reformation in effect by pleading any such matter in his reply. 29 Ind., 587; 15 Minn., 480. We claim that McLanathan could not in his reply depart from his case as alleged in his petition; the affirmative matter set up in his reply was irrelevant to the case made in his petition, and should have been stricken out on the motions made for that purpose, (§ 419 of the code,) and should have been disregarded on the trial as irrelevant matter; and as the matter of such irrelevancy was not waived by the company, that objection is still good.

The *oral talk* between McLanathan and Anthony, shown by the 2d finding, or the *knowledge* of Anthony mentioned in the 3d finding, could not operate to change or modify the written contract: 4 Kas., 160; 13 Wall., 183; 7 Cush., 175; 5 Nevada, 268; 23 Mo., 80; 2 Denio, 75; 11 Gray, 163; 13 Mass., 173.

McLanathan does not pretend any concealment, or misunderstanding, or mistake, or fraud, or that the policy reads

35—11 KAS.

differently from the way that it was intended and understood
to read when he accepted it.   But on the contrary, it appears
from the findings to have been well understood by both par-
ties that it read, and was intended to read, exactly as it appears
to have been made, and therefore we see no reason why any-
thing shown or claimed should operate to estop the company
from relying on any of the terms or conditions in the policy.
The question is not, whether McLanathan had an insurable
interest or not, but it is, whether his interest was one of abso-
lute ownership or not; and as he did not have any absolute
ownership of the property, the policy is void.   And in this
connection we refer to the clause in the policy to the effect
that the company should not be liable for loss or damage to
the property of any other party, unless the interest of such
party was stated in the policy.   The dwelling burnt was the
property of Lucy B. McLanathan, and as she was such other
party, it follows of course, that the company is not liable for
any of the damage or loss. 14 Allen, 325; 13 Wallace, 183;
20 Md., 20.)   These three cases, especially that in 14 Allen,
show that the question of *insurable interest* has nothing what-
ever to do with this point, or that clause of the policy, but
that because thereof no recovery could be had except for a
loss or damage by fire, to *property* of McLanathan, property
really his, not property of his wife or any other person.

If McLanathan shall attempt to rely on that part of the
4th finding, which in effect says that he took the policy for
the benefit of himself and wife, then we refer to the case of
*Brenner v. Bigelow*, 8 Kas., 496, and 6 N. Y., 179, and to
the reply, which will show that McLanathan did not plead
that he took the policy for the benefit of himself and wife, or
for the benefit of his wife, or as her agent at all; and there-
fore we submit that the last-mentioned part of said finding is
a nullity, as well as that part thereof which in effect states
that as to all interest, legal or equitable, in said house, owned
by said Lucy, said McLanathan made the contract of insur-
ance for and in behalf of him and said Lucy, which last-
mentioned part should we submit be also regarded as a nullity

as there is not any part of the reply which can be fairly said to include a statement or to have been intended to state any fact set forth in said 4th finding. 29 Ind., 587; 15 Minn., 480.

5. The proofs of loss mentioned in the 7th finding were not such proofs of loss as were required by the policy, even if the property was situated at the southwest corner of Second and Elm streets. The policy required all persons having a claim thereunder, to proceed at once to put the property saved in the best order possible, and render a particular account (that is, of such claim,) etc., stating the whole value and ownership of the property insured. Now if the wife had a claim, she should have made the proofs of loss, rendered the account, etc. If all our other objections are bad, still we insist that the proofs required by the policy, as well as those mentioned in the 6th finding, would require such account to be made by Lucy, the wife, and none such have been shown. If she was required to make such account, then of course the judgment was erroneous.

6. Referring again to the matter of location of the dwelling, as we read the pleadings there is no allegation of any such mistake as is mentioned in the 11th finding; and for this reason we submit that matter of mistake should be disregarded as a matter not in issue, (8 Kas., 496,) doing which leaves the 11th finding showing that the property described in the policy was located at the corner of Second and *Vine;* and we submit that so much of the 14th finding as states that the dwelling was situated at the southwest corner of Second and *Elm* streets, is not pertinent to the case made by the petition, and is pertinent only to the matter in the amendment to the reply, which matter was we submit a departure, and that it, and the finding supporting it, should be disregarded as a departure, irrelevant, and immaterial, to the cause of action sued on: (29 Ind., 587–592.)

7. A contract cannot be partly in writing and partly oral, at least to such an extent as claimed by McLanathan, so as to enable him or his wife to recover for damage to her

property, notwithstanding the specific clauses in the policy. 6 Iowa, 321; 30 Mo., 130; 22 Ind., 171-7; 15 Ill., 57; 2 Phil. on Ev., 665, note 494; 1 Greenl. Ev., § 275; 10 Minn., 322; 1 Johns. Ch., 283; 12 East, 6.

8. The court erred in permitting the jury to take with them the findings presented by McLanathan, the company having objected thereto. We submit it is not a proper practice so to do, and is not calculated to obtain the real opinion of the jury upon the facts proven, but that it enables them to do as requested.

9. Neither the verdict nor the evidence is sufficient to sustain the $400 item of damages mentioned in the verdict. No principle or rule of law will sustain the judgment for that $400. The injury was not the result of acts or omissions on the part of the company. The evidence is utterly insufficient to show any such delay as claimed, before McLanathan himself commenced to repair.

10. It is further submitted that the frequent statements in the instructions given by the court to the jury, as though the matters in issue were already determined as stated by the court, were calculated to make the jury think that the court was trying to induce them to find the facts to be as stated by it, so as to help McLanathan get a verdict which would give him a judgment. The jury would of course be prompt to act on the suggestions of the court thus made, as to what the facts of the case were; and by the time the court had got through *its disclaimer* of any *intention* to intimate an opinion on the facts, the jury would naturally understand that such "disclaimer" was made to avoid error committed by the court, in telling them in substance and effect, how some of the disputed facts should be considered as established by the evidence. We think that no court will ever succeed in convincing any person that such disclaimer would be regarded by the jury otherwise than as in substance saying to them, "You see how I look at this thing; but, notwithstanding I have so informed you, still, as it is not my province to determine the disputed facts, you go and determine them as

you will, although you and I and the world know that there is not a reasonable doubt but that you will find the facts to be as thus suggested by the court." To evade the effect of such assumption by merely disclaiming any intention to decide, will not cure the error, or right the wrong thereby committed; and we submit that, because of the assumptions of fact so made by the court in its charge to the jury, the judgment should be reversed.

*J. W. Taylor*, and *Stillings & Fenlon*, for defendant in error:

1. It is sought by this proceeding to reverse the judgment in favor of the defendant in error on a policy of insurance made to him on the house occupied as a home by himself and wife. The lots had been deeded to his wife, and the house built by him under an arrangement between him and his wife, that he would build, maintain and pay taxes on the same as long as they should live; which agreement had been well kept. These facts were known to the agent who took the risk, and who advised McLanathan that the policy in his name was all that was necessary to protect the house for him and his wife, and accepted the premium for the risk. There was a discrepancy in the description in the policy, it calling for the house in which McLanathan then lived, but describing it as being on the corner of Second and Vine streets, when in fact it was on the corner of Second and Elm streets, one block off from the corner of Second and Vine. This cannot affect the policy, nor render it necessary even to reform it, as the calls when applied to the subject, as shown by the proof, are sufficient to identify the property, rejecting the false description. 19 Johns., 449; 1 Greenl., §§ 300, 301, 302, 303; 6 Peters, 340; 2 Ohio, 518.

2. The insurance could well be effected in the name of McLanathan on the property as title is shown by the evidence and findings, as he had an interest in the property and was the agent of his wife as to her interest. 18 Md., 27, 48; 14 Md., 298; 1 Smith's Lead. Cas., 633, 638; Angell on Insurance, § 34, 35, 36, ch., 2; 50 Penn. St., 341; 2 B. Mon., 50.

3., The agent of the company could waive the indorsement on the policy of the nature of the ownership, which he did by delivering the policy, and stating to the assured that it was in proper form, after being informed of the exact nature of the title to the property. This part of the transaction, as appears on the face of the policy, as well as the application for the policy, both of which should have been in writing, and both of which were received, could both be dispensed with when the agent was advised of the exact facts, and chose to do so. The only possible purpose of either was to enable the agents of the company to avoid imposition. 23 Iowa, 84; 31 id., 216; 59 Penn. St., 227.

4. The suit could be maintained in the name of McLanathan for the entire loss, and it was not necessary to join his wife. Code, § 28; 13 Wall., 497.

5. No objection was made to the proof of loss, and it is therefore to be considered in due form and sufficient. 23 Ala., 9; 26 Ill., 360; 5 Minn., 492.

6. The company elected to repair the loss, which is a waiver of any defects, if any there were, in the insurance. (31 Mo., 546.) The election to repair bound the company for what it would cost to make the property good as it was before the fire, and changed the nature of the obligation and the rule of damages.

7. There are many questions of pleading made by the plaintiff in error. We suppose that all that the plaintiff was required to allege in his petition was the execution of the policy, the loss, and a compliance with the provisions of the policy by the plaintiff below; and that any question of title, made by the defense, could be met with allegations in the reply to avoid the effect of the defense set up, without being liable to a charge of departure.

8. There was a great deal of "fussing" when the verdict of the jury was returned, on the question of location of the property occupied by McLanathan at the time the policy was made, as well as on the trial—a dispute which, it seems to us, had been settled by the written election to repair.

9. Something may be said as to the additional $400 on account of the increase of damages by the weather, and the increase of the cost of making the house good in consequence thereof. We take it that when the insurance company elected to make the house good, it took the house in the condition it was when it made the election, and the chance of any additional cost becoming necessary by reason of the weather till the repair could be made.

10. The policy (previously made out by the agent of the company for the purpose of insuring the house) was delivered after McLanathan had informed the agent that his title was in his wife; and the company is estopped to say that their agent did not do his duty. 6 McLean, 324; 5 Metc., 192; 5 Wall., 512; 13 Wall., 233.

The opinion of the court was delivered by

BREWER, J.: On the 23d of October, 1871, plaintiff in error insured McLanathan against loss or damage by fire to the amount of $2,000, on property described in a policy then issued to him as "his two-story frame dwelling, occupied by him, situate southwest corner Second and Vine streets, Leavenworth, Kansas, and $300 on frame barn in rear of same." On the 24th of April, 1872, McLanathan commenced an action in the district court of Leavenworth county against said company, and in his petition in substance claimed that on the 29th of January, 1872, the dwelling-house specified in said policy was damaged $2,500 by fire — and that the company had immediate notice thereof, as required by the policy — and that immediately thereafter, and upon full knowledge of the facts above mentioned, the company gave notice of intention to repair the property, and proceeded, with his consent, to make preparations to do so, and undertook to do so, and that relying thereon he refrained from proceeding to repair, but that the company refused to repair, and that by reason of the damaged condition of the dwelling, caused by the fire, said building by delay became additionally damaged $1,000 — and that he performed on his

*Statement of case.*

part every act required by the terms of the contract of insurance, and asked judgment for $3,000 and interest. After answer and reply,* the case was tried by a jury, which returned the following special verdict:

·"We, the jury, find as follows: 1st.– That the dwelling-house described in the policy of insurance, was built by the plaintiff in the year 1859, on lots which had before that time been conveyed to Lucy B. McLanathan, wife of plaintiff, and the fee-simple title to which lots was then in the said Lucy B. McLanathan, also continued up to and including the date of the fire hereinafter mentioned. Said dwelling-house rested upon a stone foundation, built with mortar, and entering the ground at least a foot and-a-half.

"2d.–That at the time the said policy of insurance was made, the plaintiff applied to Daniel R. Anthony, who was the duly authorized agent of the defendant to issue policies of insurance, for a policy of insurance on said house, and that the said agent having made out this policy, the plaintiff informed him that the lots on which the house was situated were deeded to the wife of the plaintiff, but that he (the plaintiff) had built the house; and the said Anthony then stated to plaintiff that it would make no difference whether the policy was made to him or his wife, whereupon the plaintiff paid his insurance-money and took the policy.

"3d.–That the plaintiff with his family had occupied said house from the time it was built till the time of the fire herein referred to, and the said Anthony, the agent of the defendant, knew the facts as to the title to said property at the time he made said contract of insurance.

"4th.–That as to all interest, legal or equitable, in said house, owned by the said Lucy B. McLanathan, the said plaintiff, in making said contract of insurance, made the same for, and in behalf of him and wife, and took said policy of insurance to himself for the benefit of himself and wife, the said McLanathan then acting in the procuring of said policy for himself, and as the agent of his said wife.

"5th.–That on the 29th of January 1872, said house accidentally took fire, and a part thereof was destroyed by fire, and the building greatly damaged both by fire, and the efforts to extinguish the same, without fault of the plaintiff.

"6th.–The plaintiff immediately notified the agent of said loss, and the agent of the defendant (Mr. Mosier) told the

[*Substance of "answer," and "reply," post, p. 552.]

plaintiff that it was unnecessary to furnish proofs of the loss, because the defendant had elected to repair the building. On the 28th of February 1872, the defendant served on the plaintiff another notice, of which the following is a copy:

'LEAVENWORTH, KANSAS, Feb. 28, 1872.

H. L. S. McLANATHAN, ESQ., Leavenworth, Kansas:

SIR: You are hereby notified of the determination of the American Central Insurance Company, of St. Louis, Mo., to repair your late residence, situated in the southwest corner of Second and Elm streets, Leavenworth, Kansas, which was on or about the 29th of January, 1872, damaged by fire and water, and that the said company will commence the said repairs immediately on the receipt of proper proofs of loss, as per your policy of insurance in said company, on said building. Yours very truly,

DAVE RORICK,
*Special Agent Am. Cen. Ins. Co., St. Louis.*'

"7th.–That on the 7th of March 1872, the plaintiff delivered to defendant the notice and proof of loss, of which copies are inserted in the answer of defendant, to which proofs no·objection was made by the defendant at any time.

"8th.–That after the expiration of one month from the date of delivery of said proofs of loss, said defendant, having failed to make any objections thereto, or to repair said building, informed the plaintiff that said defendant would not repair said loss; and thereupon said plaintiff made a portion of the necessary repairs and took possession of said house.

"9th.–That the plaintiff in making his proof of loss did not intend to defraud defendant.

"10th.–That the foundation of the kitchen attached to said house was moved by plaintiff onto the west side of said house on the 4th of March 1872, the defendant agreeing thereto on plaintiff's paying the cost of said removal and whatever additional sum it might cost to make the repairs by reason of the location of said kitchen on the west side of said house.

"11th.–That the agent of defendant, in making the policy made a mistake in describing the location of the building, as at the southwest corner of Vine and Second streets, instead of at the southwest corner of *Elm* and Second streets.

"12th.–That there was at the date of said insurance polic y a street in said city called Vine street, and a street called Second street, and the street called Elm street, and that the agent of the defendant, at the time of the execution of the policy knew that the dwelling-house aforesaid was located on the southwest corner of Elm and Second streets, said Vine street being one street north of Elm.

. "13th.–That at the time of the execution of the said policy

there was erected on the southwest corner of Second and Vine streets a frame dwelling-house, the north part of which was two stories in height, the upper story being a half-story, but the south part of same was one story, and that there was also then, in the rear of said dwelling-house, a barn or stable, and that neither of which last-named dwelling or barn was injured by fire.

"14th.–That the dwelling described in said policy is and was the same which is now, and was occupied by the plaintiff and his family, and was then and now, situated on the southwest corner of Second and Elm streets.

"15th.–That the injury to said dwelling-house by said fire, and the amount it then would have cost to repair the same was $1,600.

"16th.–That at the time said defendant informed said plaintiff that said defendant would not repair said house, the injury to the same, by reason of the action of the weather thereon, and the additional amount it would cost to repair the same, in consequence of such exposure to the weather, was $400.

"On the above facts, we the jury assess the plaintiff's damages at two thousand dollars, as follows: By fire, $1,600 damages; by exposure to weather, $400 damages. Total amount, $2,000.        JAS. BAUSERMAN, Foreman."

Upon this special verdict judgment was entered in favor of McLanathan for $2,000, and the insurance company now brings the case here on error. A lengthy and elaborate brief has been filed by the learned counsel for plaintiff in error, and many questions presented and discussed in it. We shall not be able to notice many of these in detail, nor will it be necessary, as the determination of two or three will decide the case, the principles involved in those controlling the remainder.

The first question we shall notice is as to the description of the property insured. It is described in the policy as "his two-story frame dwelling, occupied by him, situate southwest corner Second and *Vine* streets, Leavenworth, Kansas, and frame barn in rear of same." As a matter of fact the dwelling occupied by McLanathan and which had been occupied by him for a dozen years, as

1. Error in description; effect of.

was well known to the agent of the company at the time he drew up the policy, was on the southwest corner of Second and *Elm* streets. The jury found that the agent knew the location of McLanathan's residence, and simply made a mistake in writing "Vine" instead of "Elm" street. This is not a case of an entire misdescription, but simply one of repugnant calls. The dwelling occupied by McLanathan was not on the corner of Second and Vine streets; and *vice versa*, the building on the corner of Second and Vine streets was not and had never been occupied by McLanathan. In such a case the contract is not void for uncertainty, nor is there any need of applying for a reformation of the contract, provided it appear either from the face of the instrument or extrinsic facts which is the true and which the false description. *Falsa demonstratio non nocet, cum de corpore constat.* "The rule is clearly settled that where there is a sufficient description set forth of premises, by giving the particular name of a close or otherwise, we may reject a false demonstration." *Doe, d. Smith, v. Galloway*, 5 Brad., 43, 51. In 1 Greenleaf on Ev., § 301, it is said: "If there be a repugnant call, which by the other calls in the patent clearly appears to have been made through mistake, that does not make void the patent. * * * So if lands are described by the number or name of the lot or parcel, and also by metes and bounds, and the grantor owns lands answering to the one description, and not to the other, the description of the lands which he owned will be taken to be the true one, and the other rejected as *falsa demonstratio*." Now upon the face of this policy no repugnancy is apparent, and it is only in attempting to apply the description to the property that the repugnancy appears, and in the very application is disclosed that which clearly determines which is the true and which the false description. For that McLanathan should insure his homestead, is reasonable; that he should insure property in respect to which he had neither possession, claim, nor title, is improbable. According to the last citation from Greenleaf, if McLanathan and wife conveyed "their dwelling occupied by them on the

corner of Second and Vine streets," and it appeared that they owned and occupied the dwelling on the corner of Second and Elm streets, and did not own that on the corner of Second and Vine, the conveyance would be good of that which they did own; *a fortiori*, when the instrument is not a conveyance of title, but only a contract for indemnity, will the repugnancy be resolved in favor of that property which alone it was the interest and therefore the evident purpose of the parties to secure.   We think therefore that there is nothing in the description to prevent the defendant in error from recovering on this policy. *Loomis v. Jackson*, 19 Johns., 449; 1 Greenleaf on Ev., §§ 300, 301, 302, and notes; 2 Hill. on Real Prop., 358, 368.

We come now to a question or questions far more difficult than the preceding, and which are of vital importance.   It appears from the first finding that the fee of the lots upon which was the building insured was conveyed to the wife of the defendant in error prior to the erection of any building, and has so remained ever since.   The questions then arise, Had McLanathan any interest in the building that he could insure, or such as would enable him to maintain an action on this policy for injury?   If he had, did the failure to state the exact nature and extent of that interest avoid the policy?   How far may the company raise these questions, and how far is it estopped, and how much has it waived, by its own acts or the acts of its agents?   The policy in this case was not issued upon the strength of a written application, or based upon representations therein.   It, in and of itself, states and embodies the entire contract between the parties.   It is provided in it that "if the interest of the assured is not one of absolute ownership, and the nature of the interest is not clearly defined in writing hereon, * * * then this policy shall be void." The interest of defendant in error was not one of absolute ownership, and the nature of that interest was not stated in the policy.   As against this, the jury find, (and the findings are well supported both by the testimony of the assured and

2. Contract of insurance. Interest of assured. Waiver by company's agent.

the agent,) that the true nature of the interest of defendant in error, and the exact condition of the title, were stated by the assured to the agent, and known by him at the time of the issue of the policy, and that the agent told the assured that it made no difference, and that thereupon the assured paid his premium and took the policy. Was the act of the agent a waiver of the stipulation in the policy, and could the agent bind the company by such waiver? The bulk of the fire insurance business of this state is done by eastern companies, who are represented here by agents. These agents are authorized to issue policies of insurance, and the entire consummation of the contract is intrusted to them. Blank policies, signed by the home officers of the company, to be filled up and issued, and to be binding when countersigned by the agent, are placed in their hands. It is a matter of no small moment therefore that the exact measure and limit of the powers of these agents be understood. All the assured knows about the company, is generally through the agent. All the information as to the powers of and limitations upon the agent, is received from him. Practically the agent is the principal in the making of the contract. It seems to us therefore that the rule may be properly thus laid down: That an agent authorized to issue policies of insurance, and consummate the contract, binds his principal by any act, agreement, representation or waiver, within the ordinary scope and limit of insurance business, which is not known by the assured to be beyond the authority granted to the agent. See as sustaining these views the following late cases: *Miner v. Phenix Ins. Co.*, 27 Wis., 693; *McBride v. Republic Fire Ins. Co.*, 30 Wis., 562; *Anson v. Winnesheik Ins. Co.*, 23 Iowa, 84; *Viele v. Germania Insurance Co.*, 26 Iowa, 9, and notes; *Miller v. Mutual Benefit Life Ins. Co.*, 31 Iowa, 216; *Franklin v. Atlantic Fire Ins. Co.*, 42 Mo., 456; *Columbia Ins. Co. v. Cooper*, 50 Penn. St., 331; *Manhattan Ins. Co. v. Webster*, 59 Penn. St., 227; *Insurance Co. v. Wilkinson*, 13 Wall., 222.

*Insurance companies and agents. Powers of agents.*

*Agent may waive conditions, and bind company.*

The stipulation in the policy that the nature of the assured's interest if less than an absolute ownership must be stated, is one exclusively for the benefit of the insurer. It makes no difference to the assured whether his interest be limited or absolute, partial or total, providing the insurer will insure that interest. It is important for the insurer to know the nature and extent of that interest that he may judge of the safety and expediency of the risk. Being a stipulation for the insurer's benefit, he may waive it. But it may be said that all prior talk and negotiation is merged in the written contract, and that this represents the entire agreement between the parties. The testimony shows that the policy was all prepared, signed, and ready for delivery at the time of this conversation between the agent and McLanathan. It is not therefore prior but contemporaneous. It is part of the agreement. A case almost exactly in point is that of *Franklin v. Atlantic Fire Ins. Co.*, 42 Mo., 456. In that case the policy was issued without any written application. The exact state of the assured's title and interest was made known to the agent. He made no note of it on the policy, and told the assured it would make no difference. The policy contained a stipulation similar to that in this. Mr. Justice Holmes, in giving the opinion of the court, says: "The actual state of the case then is, that the agent receives a verbal application for insurance, and before the policy takes effect by delivery the interest of the assured in the property is truly stated to his satisfaction, by which his attention is called to the circumstance that the specific character and extent of the interest ought to be expressed in the written instrument, and he answers, 'it will make no difference — it is all right,' receives the premium, and delivers the policy. The policy is accepted, and the premium paid, on the faith of this assurance. The party insured goes away relying upon its validity to protect him against loss during the time specified. He acts upon a state of things represented to him by the agent to be sufficient, and it would work a fraud upon him if the company

*Marginal notes:*
3. Interest of assured; purpose of stating.

4. Statement may be waived by agent.

should now be allowed to avail itself of this defense."
Language more appropriate to the facts of this case could
hardly be found elsewhere, and it meets our entire approba-
tion.   See also the case of *Anson v. Winnesheik Ins. Co.*, 23
Iowa, 84, where both the application and the policy were
made out, at the instance of the agent who had full knowl-
edge of the facts, in the name of Jane Anson, the former
owner, but then deceased, and the heirs were held entitled to
recover.   More than this, the company after the loss, and

5. Offer to
repair, a
waiver by
company.

with full knowledge of the facts elected to repair
the loss, and served notice upon defendant in
error, of such election.   This it would seem
ought to be a waiver of any such omission in the policy as
that claimed in this case. *Bersche v. Globe Mutual Ins. Co.*,
31 Mo., 546.

Had McLanathan any insurable interest?   He built the
house on his wife's lots, and with her occupied it as their

6. Interest of hus-
band in wife's
property.

joint homestead for many years.   He acted as his
wife's agent, so far as she had any interest, legal
or equitable, in making this contract, and took the policy for
the benefit of himself and wife.   The company had full
knowledge of the condition and title at the time of the pol-
icy and the notice of election to repair.   No one has as yet
succeeded in giving an entirely satisfactory definition of the
term "insurable interest."   Angell in his work on Fire and
Life Insurance, § 56, says, "that it would be extremely dif-
ficult to afford any accurate definition of 'insurable interest;'"
and in the same section: "Accordingly it is recognized in
this department of the law, that almost any *qualified* prop-
erty in the thing insured, or even any reasonable expectation
of profit or advantage to be derived from it, may be the sub-
ject of this species of contract; certainly if it be founded in
some legal or equitable title."   And again: "It is very clear
that the term *interest*, as used in applications to the right to
insure, does not necessarily imply property."   It is also well
settled that a trustee or agent, having no personal pecuniary
interest in the property, may yet effect an insurance on it.

*Lucena v. Crawford*, 3 Bos. & Pull., 95, and 5 id., 289; Angell on Insurance, § 73; *Ins. Co. v. Chase*, 5 Wall., 512; *Goodall v. N. E. Fire Ins. Co.*, 25 N. H., 169; 2 Greenl. on Ev., § 379; *Multenberger v. Beacon*, 9 Penn. St., 198; *Siter v. Morris*, 13 Penn. St., 218. It has also been decided that a husband has an insurable interest in buildings situate on his wife's realty: *Franklin Ins. Co. v. Drake*, 2 B. Mon., 47; Angell on Ins., § 64; *Mutual Ins. Co. v. Hale*, 18 Ind., 27; *Harris v. York Mutual Ins. Co.*, 50 Penn. St., 341. In this last case Woodward, C. J., speaking for the court, says, "If there were more doubt than there is about the insurableness of the husband's interest, we think his purchase of the policy could be supported on the ground of agency for his wife." And again: "When he has effected an insurance on houses on their joint possession, but which belong to her, the law will presume her ratification of his act, if not her precedent authority to perform it, and will support the insurance for her benefit." While perhaps it may be doubted whether these authorities are entirely applicable in this state, owing to the statutory changes in the relations of husband and wife to the separate property of each, yet we think they fully justify us in holding that where a husband erects a dwelling on his wife's lots, and with her occupies it as a mutual homestead, and as her agent effects an insurance for their mutual benefit, though in his own name, and the insurer, aware of these facts, issues the policy and receives the premium, he may recover on the policy in case of a loss.

One or two more questions remain for consideration. It is earnestly insisted that the reply is bad for departure, and several motions were made to strike out portions of it.

7. Pleading: reply. Departure from petition.

These motions were overruled and exceptions duly taken. The substance of the petition has been already stated. The defendant answered setting up among other defenses that the property insured belonged to Mrs. McLanathan, and not to defend-

Substance of answer and reply.

ant in error, and that the policy was void because the nature of his interest was not stated. For reply McLan-

athan admitted that the fee of the lots was in his wife, and then alleged substantially the facts found in the verdict. The facts, as we have seen, entitle him to recover; and in the manner of pleading those facts we see no error. In his petition he sets out the contract, alleges performance by him, and a loss by fire, and asks judgment for the amount of his damage. The defendant answers that the plaintiff cannot recover on this contract because the property was not his, and because the contract was void. The reply sets up facts which destroy these defenses, and leave the plaintiff to recover upon the contract. The reply does not set up a different basis of recovery from that presented in the petition. The petition does not allege an absolute ownership, and the reply a limited interest and an agency, for the petition is silent as to the nature and extent of McLanathan's title and interest. All the facts as claimed by either party were fully presented in the pleadings. There was no surprise, and no concealment. The case was fairly though hotly contested, and we should be slow to disturb a verdict, which seems to fairly respond to the testimony, upon what is at best a mere technicality.

It will be seen that the jury find that the damage done by the fire directly was $1600, and that the damage done by exposure to the weather through the delay of the company to repair was $400. It is claimed that this item of $400 is not covered by the policy, nor sustained by the evidence. Neither of these objections are well taken. The policy stipulated that the company might repair, giving notice of its intention so to do. It gave such notice on the 28th of February, and then after more than a month had elapsed it declined to do anything about it. During all this time the plaintiff in error waited on the company, and the property remained exposed to the weather. If finally the company had repaired it would have been compelled to restore the building to as good condition as it was before the fire, and could not have asked McLanathan to pay for the extra expense caused by its delay to immediately repair. So, refusing finally to repair, it must pay what it would cost to

8. Damages subsequent to fire, by delays.

36—11 KAS.

make the repairs at the time of its refusal. The witnesses fixed the amount of this damage at different figures, some above and some below $400.

Many objections were made during the trial to the admission of evidence, and the rulings thereon are now assigned for error. Complaint is made of the manner of preparing the special verdict, of the remarks of the court to the jury, and of the refusal to give certain instructions. It is enough to say in reference to these various matters that we see no error working substantial injury to the rights of the plaintiff in error.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.