ANNA L. NELSON, Appellant, v. NEDERLAND LIFE INSURANCE
COMPANY, Limited.

**Life Insurance Policy:** FALSE REPRESENTATIONS. Where a life insur-
ance policy based on the application of the assured stipulated
1  that, if any of its statements proved untrue, the policy should be
void, the false statement that the applicant's health was good, and
that he had no occasion to consult a physician, will avoid the
policy.

REPORT OF MEDICAL EXAMINER: *Estoppel.* Under Code, section 1812,
declaring that, where the medical examiner of a life insurance
company shall declare an applicant a fit subject for insurance,
2  the company will be estopped from setting up as a defense to an
action on the policy that the insured was not in the condition of
health required by the company, unless the same was procured
through fraud of the assured, an insurance company is estopped
from inquiring into the truthfulness of the answer in the assured's
application relating to his health, in the absence of an allegation
that the medical examiner's report was improperly obtained.

*Policy issued in sister state.* Code, section 1812, as it is a rule of pro-
3  ceedure, applies to a policy issued by an insurance company in
another state.

ESTOPPEL: *Refusal to cancel.* The refusal of an insurer's agent to
acquiesce in a surrender of a policy, made in ignorance of the
3  falsity of assured's statements in his application for a life policy,
is not a waiver of such objection.

PRIVILEGED COMMUNICATIONS: *Physicians.* Code, section 4608, declar-
ing that no practicing physician shall be allowed to give testimony
to disclose a confidential communication properly intrusted to

him in his professional capacity, does not prevent him from testifying that he was consulted by the deceased, and that he prescribed for him; no attempt being made to show what the patient orally communicated or what the physician ascertained by observation or examination.

SAME.   Under Code, section 4608, a physician cannot testify as to the nature of the disease with which the patient was afflicted or whether he had advised the patient of its nature.

SAME.   Code, section 4608, does not apply to an affidavit of assured's physician showing the cause of death and the period of decedent's sickness, which was furnished to the insurance company with proofs of death, and introduced by it as an admission by plaintiffs of its contents.

**Doctor's Prescriptions:** ADMISSIBILITY.   Under Code, section 4608, the prescriptions of a physician were not admissible when it had been shown that the patient was suffering from one disease, only, during the time of his treatment by such physician.

*Appeal from Calhoun District Court.*—HON. S. M. ELWOOD, Judge.

THURSDAY, FEBRUARY 8, 1900.

THE defendant is a life insurance company organized under the laws of Holland, with its principal place of business at Amsterdam, and an office in New York City.   It issued a policy to Charles J. Nelson, January 18, 1897, based on an application dated January 6th previous. To cover the first premium, he executed a note to the soliciting agent of the defendant, which remains unpaid, and died April 27th of the same year.   In his application were these questions and answers: "Q.   What is the name and address of your medical attendant, or that of your family?   A.   None.   Q.   What physicians have you consulted here or elsewhere?   When?   For what complaints?   A.   None.   Q.   What is your present health.   A.   Good." It was stipulated that these statements to the medical examiner should be the basis of the policy, and that, if any untrue averment was contained therein, or "if it shall thereafter appear that any material information has been withheld, then said policy shall be null and void, and all moneys which shall have been paid on account of

insurance shall be absolutely forfeited to the company."
Payment of the indemnity was refused on the ground that
these answers were false, in that the insured had had a medi-
cal attendant; that he was then suffering from the disease
known as "nephritis," and had concealed the ailment of sup-
pression of the urine. After all the evidence had been intro-
duced, the court directed a verdict for the defendant, upon
which judgment was subsequently entered.. The plaintiff
appeals.—*Reversed.*

*L. W. Moody* and *Dale & Bissell* for appellant.

*Guernsey & Granger* for appellee.

LADD, J.—The policy was, by its terms, based on the
application of the assured, which stipulated that, in event
any of its statements proved untrue, the contract should be
null and void. This application formed a part of the
policy, and amounted to a warranty of the truthful-
ness of the statements made, and it is not material
that some of the answer may have been unimportant. The
parties, having agreed to their materiality, set that inquiry at
rest. *Hygum v. Insurance Co.,* 11 Iowa, 25; *Miller v. Insur-
ance Co.,* 31 Iowa, 225; *Miles v. Insurance Co.,* 3 Gray, 580;
*Insurance Co. v. France,* 91 U. S. 510 (23 L. Ed. 401);
*Powers v. Association,* 50 Vt. 630; *McCoy v. Insurance Co.,*
133 Mass. 82; *Dewees v. Insurance Co.,* 34 N. J. Law, 244;
*Cushman v. Insurance Co.,* 63 N. Y. 404; *Insurance Co. v.
Raddin,* 120 U. S. 183 (7 Sup Ct. Rep. 500, 30 L. Ed. 644);
*Macdonald v. Insurance Co.,* L. R. 9 Q. B. 328. If the
insured consulted a physician, even though for a disease other
than that from which death resulted, or from apprehension
of having some ailment, the defendant was interested in
knowing the fact, that further investigation might be made.
By the answers that none had been seen, it may have been
induced to refrain from doing so. The information as to
whether the insured had had occasion to resort to medical

aid, however, would seem of no little importance to a company about to take a risk on the extent of his life, and, if false in this respect, there appears no ground, in the absence of statutory enactment, for upholding a contract based thereon. As directly in point, see *Cobb v. Association,* 153 Mass..176 (26 N. E. Rep. 231, 10 L. R. A. 666); *Insurance Co. v. McTague,* 49 N. J. Law, 587 (9 Atl. Rep. 766).

II.   The defendant set up in its answer the falsity of the answers of the assured contained in the application as a breach of warranty, and relied thereon to defeat recovery on policy. No claim was made that the report of its medical examiner was improperly obtained. In *Weimer v. Association,* 108 Iowa, 451, and *Stewart v. Association,* 110 Iowa, 528, we held that the insurer is estopped from inquiring into the correctness of such answers in the absence of an allegation that the medical examiner's report was procured through fraud or deceit. The fact that the statements amounted to warranties can make no difference. "The estoppel," as said in *Weimer's Case,* is "directed to inquiry as to the condition of health, and it is quite immaterial what representations have been made or warranties given. The company having investigated, and for itself ascertained and declared the condition of the insured to be such as required by its rules and regulations, will not be permitted to interpose as a defense the physical infirmities of the deceased of which it knew or might have known as the result of its examination." No defense then available to the defendant was pleaded, and the verdict in its favor cannot be sustained. This error was as clearly and specifically assigned as required by the statute. Though somewhat involved in repetition, the twenty-fourth assignment points out that in holding, throughout the trial, notwithstanding the examiner's report the defendant might plead and prove the noninsurable condition of the assured at the time the policy was issued, without averring fraud in the procurement of such report, the court erred.

III.   Whether the policy is a New York contract or not, the laws of this state relating to procedure, control. "Foreign insurance companies are not compelled to do business in this state.   If they voluntarily choose to do so, however, they must submit to such conditions and restrictions as the legislature may see fit to impose." *Stanhilber v. Insurance Co.* 76 Wis. 285 (45 N. W. Rep. 221) ; *Hebb v. Insurance Co.* 137 Pa. Sup. 174 (20 Atl. Rep. 837; *Paul v. Virginia,* 8 Wall. 168, (19 L. Ed 357) ; *Insurance Co. v. Rudwig,* 80 Ky. 223 ; *Williams v. Haines,* 27 Iowa, 251 ; *Insurance Co. v. Herriott* 109 Iowa, 606. The rule of the statute (section 1812 of the Code) so evidently relates to procedure that discussion of the point is not required.

IV.   Dr. Wright was permitted to testify that he was consulted in his professional capacity by the assured December 1, 3, 9, 23, 29, 1896, and January 7 and 12, 1897, and that he prescribed for him during this time.   This was objected to as being in violation of section 4608 of the Code, providing that: "No * * * practicing physician * * * shall be allowed, in giving testimony, to disclose any confidential communication properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline.   Such prohibition shall not apply to cases where the party in whose favor the same is made waives the rights conferred."   It will be observed that nothing was sought as to what may have been orally communicated by Nelson, or what the physician ascertained by observation or examination.   See *Prader v. Association,* 95 Iowa, 149.   Thus far all evidence tending to show the nature of the ailment was carefully avoided.   That he attended him as a physician, and prescribed, involved no disclosure of any information obtained professionally.   The evidence had reference to their relation solely, and not to any communications because of it. *Patten v. Association,* 133 N. Y. 450, (31 N. E. Rep. 342) ;

*Briesenmeister v. Supreme Lodge,* 81 Mich. 525, (45 N. W. Rep. 977). In *Boyle v. Association,* 94 Wis. 312, (70 N. W. Rep. 351), relied upon by appellant, the point determined was that the privilege was for the benefit of the patient; not the physician. The evidence there held inadmissible was of information acquired when treating the patient, and not of the fact of attending and prescribing for her.

V.    In other questions the witness was asked whether he advised the decedent as early as December 3d that he was suffering from the disease for which he was treating him, and also whether, at the time of the last treatment, March 29, 1897, he suffered from any disease other than that for which he treated him in December. This we regard as a clear attempt to evade the statute. Whatever the advice given, information upon which it was based was derived from the deceased. So, too, the doctor could only ascertain that the patient suffered from no other disease in the same way. The prescriptions were also introduced in evidence, and their ingredients explained. Now, having fixed upon the fact that he was suffering from one disease only for the four months prior to his death, and the treatment administered, can it be questioned that the nature of his malady was thereby made known to those skilled in medicine? The statute does not permit such a disclosure, though indirectly made. The appellee now insists that the prescriptions were introduced in evidence solely for the purpose of fixing the dates of consulting the doctor. Their offer was not so limited, and might have been used as suggested. Undoubtedly, the witness had the right to refresh his memory as to dates from these prescriptions. Whether they were admissible independent of his testimony we do not determine.

VI.    The defendant introduced the proofs of loss including the affidavit of Dr. Wright, from which it appeared that he had been the medical attendant of the deceased for four months prior to his death; that during that time from

December 1, 1896, he had treated him for nephritis, from which he died, and that he had suffered therefrom about one year; that deceased dated his trouble from an attack of urinary suppression in May, 1896. · This affidavit was objected to on the ground that death had been admitted, and it was a disclosure of a confidential communication by deceased to his physician. The policy required no more than satisfactory proofs of death, and the company might, under this provision demand that the fact of death be shown with reasonable definiteness and certainty. But, under the guise of ascertaining that fact, it had no right to insist upon information concerning the cause thereof, as that would have no direct bearing on such an inquiry. The statements must be regarded, then, as gratuitous. But the affidavit was presented to the company by the beneficiary as a part of her proofs of loss, and was a communication to it of facts indicating the invalidity of the policy. It may not be entitled to the weight which should be attached to a direct assertion by the plaintiff, but having been forwarded by her for the consideration of the defendant in determining its liability, it should be received in evidence as in the nature of an admission, and accorded the consideration due to it in view of all the particular circumstances of the case. But it is said this was in violation of the statute already mentioned. That does not prescribe any rule of professional conduct. The physician, in disclosing the secrets of his patient in conversation or writing, violates no law of which we have knowledge, though such a course may be reprehensible, and in disregard of professional propriety. It is "in giving testimony" in a judicial proceeding that such disclosures are prohibited by statute, and doubtless this may no more be done by affidavit than orally. But here the information ascertained professionally had been revealed in an affidavit, not for use in such a proceeding, and it was not offered nor received as evidence of the physician, or of what he said, as in that event it would have been incompetent, but as an admission by the

plaintiff that its contents were true. *Buffalo Loan, Trust &
Safe-Deposit Co. v. Knights Templar & Masonic Mut. Aid
Ass'n,* 126 N. Y. 450, (27 N. E. Rep. 942), is directly in
point. *Insurance Co. v. Dick,* 117 Mich. 518, (76 N. W. Rep.
9, 44 L. R. A. 846), and note 854; *Insurance Co. v. Newton,*
22 Wall. 32, 22 L. Ed. 793; Joyce Insurance section 3766.

VII. The plaintiff offered to show that, after the
delivery of the policy, the insured, when sick, proposed to
surrender it to one of the defendant's agents, who had called
to obtain permission to sell the note given for the
premium. But it does not appear that this agent
knew of his then malady, nor that he had erroneously
answered any of the questions in the application. In abso-
lute ignorance of anything affecting the validity of the policy,
his refusal to acquiesce could have waived none of the objec-
tions thereto. Because of the errors mentioned the judgment
is REVERSED.

GRANGER, C. J., not sitting.