FRANCIS MURPHY, Appellee, v. NATIONAL TRAVELERS BENE-
FIT ASSOCIATION, Appellant.

INSURANCE: Accident Insurance—Construction of Policy—War-
1  ranties and Representations. A statement in an application for
membership in an association furnishing insurance for accidents
that applicant's income was "at least $750 annually" is, under
the terms of the application in question, a "representation" and
not a "warranty."

INSURANCE: Accident Insurance—Falsity of Representation—Bur-
2  den of Proof. False representations, to avoid a policy of insur-
ance, must be false *to the knowledge of the insured,* and the
insurer has the burden to so show, by clear, satisfactory and
convincing evidence. Evidence reviewed, and held insufficient

to carry to the jury the question (a) of the *falsity* of representations as to the insured's income, and (b) of the insured's *knowledge* of such falsity, if it was false.

DEEMER, J., dissents, holding that a jury question was presented on both the element of falsity and knowledge thereof.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

MONDAY, JANUARY 22, 1917.

Action at law, in which plaintiff seeks to recover as beneficiary under a certificate of accident insurance issued to one George B. Murphy. There was a trial to a jury. At the close of the testimony, the trial court directed a verdict for plaintiff on plaintiff's motion. Defendant appeals. —*Affirmed.*

*Carr, Carr & Evans,* and *E. K. Maine,* for appellant.
*Henry & Henry,* for appellee.

PRESTON, J.—Plaintiff alleges the corporate capacity of the defendant, the issuance of the certificate, and that plaintiff is the beneficiary named; that on August 20, 1914, the said George B. Murphy met with an accident causing his death. A copy of the certificate is attached to the petition, on the cover of which the following appears:

"General Commercial Accident Department. National Travelers Benefit Association, Des Moines, Iowa. No. 14150. Issued to Geo. B. Murphy."

The following provision appears in the certificate of membership:

"This certificate includes the endorsement and attached papers, if any, and contains the entire contract of insurance except only as it may be modified by the association's classification of risks in cases of change of occupation."

On the back of the certificate, which is made a part thereof, is the following:

## "Copy of Application.

"To the board of directors, National Travelers Benefit Association: I hereby make application for membership in the association, basing my application on the following representation of facts, all of which I hereby certify to be true, complete and material to the risk."

In said application appears the following: ·

"Name in full: George B. Murphy. Age 19. Occupation: hdw. clerk and furniture. (Employed by E. A. Shaw.) My duties are fully described as follows: Clerk in Hdw. & Fur. store. *Is your total income at least $750 annually? Yes.*"

The certificate also contains the following provisions:

"Accident Department. Certificate of Membership. (N. T. B. A.) National Travelers Benefit Association, Des Moines, Iowa.

"In consideration of an advance payment of $4 does hereby accept George B. Murphy (hereinafter called the assured) of Rippey, and state of Iowa, as a member in the accident department of this association, and does hereby insure said member until his next ensuing payment falls due, beginning at 12 o'clock noon, central standard time on the date of this policy, against loss of life, limb, sight and time, resulting from bodily injuries effected directly and independently of all other causes through external, violent and accidental means, subject to all the conditions and provisions hereinafter contained.

"If as the result of such injuries the assured dies within 90 days from the date of the accident, the association will pay to his legal beneficiary the sum of $2,000.

"This policy shall be void if there has been fraud or wilful misrepresentation by the member concerning this insurance."

Defendant's answer admits the issuance of the certificate, admits plaintiff is the beneficiary named, and admits

that George B. Murphy met with an accident causing his death as alleged. Defendant denies, however, that it is indebted to plaintiff in the sum of $2,000, or in any other sum or amount in excess of $1,000. The answer alleges that, at the time deceased made the application and at the time of his death, his total annual income did not exceed $416, as he well knew; that for the purpose of deceiving and defrauding defendant the said deceased in his application falsely and fraudulently stated, represented and alleged that his total income was at least $750 per annum; that defendant issues three classes of accident insurance risks; designated as the "Business Men's Preferred," "General Commercial," and the "Farmers' and Mechanics' Special;" that each of said classes is determined in part by the occupation of the applicant and in part by the annual income received by such applicant; that the "General Commercial" is that in which said deceased obtained the certificate of insurance; that, to entitle him to obtain a certificate in said class, it is essential, under defendant's rules, that he possess an annual income of not less than $750; that, in view of the income of deceased, he was not eligible to said class, but to the "Farmers' and Mechanics' Special," which includes farmers, mechanics and persons whose income is less than $750; that members eligible to said class are limited to $1,000 for death benefits; that defendant relied on the statement of deceased that his annual income was $750 and issued the certificate, relying thereon; that, but for such statement, deceased would not have been received as a member in any other class except the "Farmers' and Mechanics' Special," which limits the recovery to $1,000; defendant admits that it is indebted to plaintiff in the sum of $1,000, which sum is tendered and an offer to confess judgment is made.

In another division of the answer, it is alleged that the statements before set out in the application as to the in-

come of deceased constituted a warranty, which statement and warranty were false and were known to the said deceased to be false; that his income was but $416 per annum; that deceased was not eligible to the class in which he was received, but to another, by which death benefits were limited to $1,000; that the warranty has been breached by the statements referred to, which it is alleged were false and untrue; and that, therefore, the certificate has no binding effect upon this defendant, and defendant denies that it is indebted to plaintiff in any sum whatever.

Plaintiff's motion for a directed verdict was upon the following grounds:

"(1) The defendant has failed to prove or to offer any evidence upon which the jury could find that the applicant for this insurance falsely stated or fraudulently, or either, his total annual income; (2) that the question of the amount of his income, total annual income, is wholly immaterial to the right of the recovery of the benefits provided in the contract in the event of the death of the applicant; (3) that the contract evidenced by the certificate, on its face and by its terms, makes no reference whatever to any classification of risks and makes no reference whatever to any by-laws, rules or regulations of the company, and there is no evidence of any knowledge whatever on the part of the applicant that there were any by-laws, rules and regulations that have any effect whatever or any relation whatever as to the question of his total annual income."

The motion was sustained, and a verdict directed for plaintiff for $2,000, with interest, or a total of $2,120, upon which judgment was entered, with costs.

1. INSURANCE: accident insurance: construction of policy: warranties and representations.    1.  To sustain its contention that the statement before referred to as to the income of the insured is a warranty, appellant cites Cooley's Briefs on the Law of Insurance, Vol. 3, page 1935, and *Nelson v. Nederland Life*

*Ins. Co.,* 110 Iowa 600; while appellee contends that statements in an application for insurance will be considered representations whenever there is room for doubt, and will not be considered warranties unless expressly agreed upon as such by the terms of the policy itself, particularly when they relate to matters of opinion, citing: *Alabama, etc., Co. v. Johnson,* (Ala.) 2 So. 125; *McClain v. Provident Savings Life Assurance Society,* 110 Fed. 80; *Royal Neighbors v. Wallace,* (Neb.) 89 N. W. 758; *Miller v. Mutual Benefit Life Ins. Co.,* 31 Iowa 216; *Moulor v. American Life Ins. Co.,* 111 U. S. 335 (28 L. Ed. 447).; *Rogers v. Phoenix Insurance Co.,* (Ind.) 23 N. E. 498; *Northwestern Mut. Life Ins. Co. v. Woods,* (Kans.) 39 Pac. 189; *Weisguth v. Supreme Tribe of Ben Hur,* (Ill.) 112 N. E. 350; *Houghton v. Manufacturers' Mut. F. Ins. Co.,* 8 Metc. (Mass.) 114; *Lynchburg Fire Ins. Co. v. West,* 76 Va. 575; *Merchants, etc., Co. v. Schroeder,* 18 Ill. App. 216.

It seems to be well settled that the distinction between warranties and representations in insurance contracts is that a warranty must be true in fact, and, although not fraudulently made and not material to the risk, nevertheless, if it is shown to have been false in fact, the contract will be avoided, while a representation will not avoid the policy if the representation is substantially true and made in good faith. It is usually to the advantage of the insurer to consider all statements as warranties, and of the insured to make them representations. Some of the courts state the rule substantially like this: That the courts, being strongly inclined against forfeitures, will construe all the conditions of the contract and the obligations imposed, liberally in favor of the assured and strictly against the insurer; that it requires clear and unequivocal language to create a warranty, and every statement or engagement of the assured will be construed to be a representation, and not a warranty, if it be at all doubtful in meaning, or the

contract contain contradictory provisions relating to the subject, or be otherwise reasonably susceptible of such construction. In other words, the courts will lean against that construction of the contract which will impose upon the assured the burden of a warranty, and will neither create nor extend a warranty by construction. That, even though a warranty in name or form be created by the terms of the contract, its effect may be modified by other parts of the policy, or of the application, including the questions and answers. The policy in the instant case provides that the certificate includes the endorsement and all attached papers, if any, and contains the entire contract of insurance, except only as it may be modified by the association's classification of risks in cases of change of occupation. The applicant states:

"I hereby make application for membership, basing my application upon the following representation of facts, all of which I hereby certify to be true, complete and material to the risk."

It is further provided:

"The policy shall be void if there has been fraud or wilful misrepresentation by the member concerning this insurance."

There is no specific agreement anywhere in this policy, as contained in many policies, that the statements in the application shall be warranties, nor are they called warranties anywhere. The fact is that the statements are specifically referred to as "the following representation of facts," and it is agreed that the policy shall be void if there has been "fraud or wilful misrepresentation" by the member. These matters indicate that the statements were intended to be representations only. We said, in *Miller v. Mutual Benefit Life Ins. Co.*, 31 Iowa 216, 227:

"If it be construed as a representation and is untrue,

it does not avoid the contract if not wilful or if not material."

Without further discussion of this point, we are of opinion that the matter relied upon is not a warranty.

2. INSURANCE: accident insurance: falsity of representation: burden of proof.

2.     It is claimed by appellant that the statement referred to and considered as a representation was false and known by deceased to have been false, and that it was made with the intention to deceive, and that the evidence was sufficient to take the case to the jury on this question. The evidence on this branch of the case is that of two witnesses, E. A. Shaw, the employer of deceased, and Francis Murphy, the beneficiary and plaintiff, who was called as a witness for defendant. Shaw testified, substantially, that he was a hardware merchant at Rippey, Iowa; that he recalled the circumstance of the death of George B. Murphy, which resulted from injuries caused by being struck by a train, August 20, 1914; that, at the time of his death, deceased was not quite 20 years of age, and was in the employ of the witness assisting as clerk in his hardware store; that he had been filling that position for about two years; that the arrangement was that, when deceased wanted to go and do work for his father, he would have the time, provided it was not absolutely necessary for him to be at the store; that deceased used to take care of his father's business, and occasionally had a day or a half day's time to assist his father; that the father of deceased owned a 200-acre farm on the corner of the town of Rippey, and was nearly blind; that deceased and his father did not live on the farm; that deceased lived with his father in town; that, when deceased died, witness was paying him $8 a week, and that he had been paying him that from the first of March, 1914; that deceased began work at $6 per week as a green hand, and that, as he became more efficient, his wages were raised to $7 and finally to $8; that deceased

assisted his father at times, if there was any work on the farm like fixing up fences; that deceased attended to paying the taxes and rent, had charge of the renting of the farm and such things as that; that there was no other person in the family except this son to assist in the management of the farm in July, 1914. Witness testifies that, aside from the salary which he received as clerk in the store, he did not know of deceased's drawing any salary or earning any money from any other source; never heard him talk of any other; that, so far as witness knew, deceased did not have any other income from any source other than the income he received as wages. He says, however, that he does not remember talking with deceased or any member of his family on the subject of his income; that, when deceased came to work for witness, there was some conversation in regard to wages and about his earning capacity, and that deceased had been working around painting and was getting from $2 to $3 a day before he commenced working for witness; that at first deceased said he would try clerking for a month, but continued on after that; that witness and deceased talked over business occasionally, and in none of the talks did deceased suggest that he had any income from any other source.

Plaintiff testified that, at the time deceased was killed, witness had been away about a year and a half in Canada; that deceased told him what wages he was receiving while working in Rippey; that he and deceased were together as brothers and talked with each other about their affairs; that while he was at Rippey he knows of no other source of income which deceased had except the wages he was earning; that, as a member of the Murphy family, he does not know of any income that deceased may have received from any source other than what he earned; knew of no inheritance or gift of property that deceased received from any source prior to his death. He says:

"I don't mean, so far as I know, that he was given anything in the way of wages or anything that would become part of an income."

While witness was away in Canada, deceased did work for his father in the operation of the farm; deceased wrote him that he had rented the place; he had correspondence right along, but in none of the letters did he say he had received an income from any source; in none of his letters did he say that his father had given him any money or that he had inherited any money.

We have set this evidence out somewhat in detail, and the question is, as before stated, whether it was sufficient to take the case to the jury. The burden of proof is upon the defendant. The rule in a law action in a case of this character, as stated by Mr. Justice Weaver in *Boddy v. Henry,* 126 Iowa 31, at 37, is:

"The true rule, as we interpret the law, is that when the party charging false and fraudulent representations has shown that the representations were made, and that they were false, and known to be false by the party making them, the intent to deceive is implied or presumed."

In the instant case, it is and must be admitted that deceased did make the statement as to the amount of his income; for it is in writing. If the defendant has proved that such statement is false, and that it was known by deceased to have been false, then, as appellant contends, the presumption would obtain that it was made with the intent to deceive. But defendant must prove that the representation was false and known by the deceased to be false. Deceased stated that his income was $750. Defendant seeks to show that this was false, by showing that his wages were but $416 per year, and by the statements of the two witnesses that they did not know of his having any other income at the time the representation was made. One of these witnesses, a brother, was in Canada a year and a half prior

thereto, and the other witness, Shaw, says that he does not remember talking with deceased or any member of his family on the subject of his income. The evidence shows that he did do some work for his father, who was old and blind, in carrying on a large farm. He may have received some income from this, or from other sources. It is for the defendant to show that he did not, and, to establish such evidentiary fact of bad faith, falsehood or deception, the proof must be clear, satisfactory and convincing. *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 203, 209.

We discover no evidence in the record tending to show that deceased knew that the representation was false, if it was so. It is said in argument by appellant that he is presumed to know his income. That is true, and he said it was $750. Proof of his wages or his income from that one source does not show that deceased knew that his income was not $750, or, as we have already said, that it was not that amount. We are of opinion that the evidence was not sufficient, and that, had the case gone to the jury and the jury found under this evidence that the representation made by deceased was false, and that he knew it to be false, it would not sustain a finding in favor of the defendant on that point.

3. It is urged by appellee that a misrepresentation in an application for insurance will not avoid the policy unless it relates to a matter material to the risk, and, if the policy insures against the loss of time, or a limb, or life, a misrepresentation material to one phase of it does not preclude a recovery upon another; and they cite, to sustain this proposition, *Aetna Life Ins. Co. v. Claypool,* (Ky.) 107 S. W. 325; *Claypool v. Continental Casualty Co.,* (Ky.) 112 S. W. 835.

On the other hand, it is argued for appellant that the representation is material, and, further, that the parties' having agreed to the materiality of the statements sets that

inquiry at rest, citing *Nelson v. Nederland Life Ins. Co.*, 110 Iowa 600, and other cases. In view of our holding in the second paragraph of the opinion, that the evidence is not sufficient, we deem it unnecessary to go into this question at any length.

The argument for appellee is that the policy is really three policies in one; that it insured against loss of life, loss of limb and loss of time; that, if the insured lost his life, the association promised to pay to his beneficiary a certain specific sum, and certain other specific sums were provided in the event of loss of limb; that the policy then contained the provisions that if, as a result of accidental injuries, the insured should suffer partial or total disability sufficient to incapacitate him from performing the duties of his regular occupation, the association should pay a weekly indemnity during the period of such disability; that, as stated in the testimony of defendant's officers, the question as to income was to prevent over-insurance; that is to say, the association did not wish to promise to pay an indemnity for total disability which was greater than the insured was earning at that time, as that would offer a temptation to the insured to prolong the period of his disability. And appellee says that this question was, therefore, material to the risk of loss of time insured against, but it had no bearing upon the risk of loss of life or limb, and was not material to that risk.

In the *Aetna* case, supra, the policy insured against loss of life, in the sum of $5,000; against the loss of the right hand, in the sum of $2,500; and against disability, in the sum of $25 a week. The insured lost his right hand; but, on suit to recover the indemnity for the same, was met with the plea that the policy may be avoided because of a misstatement of the applicant's income in the application. The court said:

"Now, it is manifest that the representations in regard to the weekly earnings of the insured have no reference to

his right to recover for the accidental loss of life or limb, for which a round sum was payable, but are only material to the question of weekly indemnity.   It was to the interest of the company to remove from the insured all temptation to prolong unnecessarily his absence from his vocation under the indemnity clause of the policy, and therefore, as a business proposition, it would seek to limit the weekly indemnity to a sum less than the insured would make if at his business.   In the case at bar the insured was entitled * * * to no weekly indemnity whatever.   Therefore the indemnity clause of the policy has no material bearing upon the accident sued on.   Certainly, if the insured had lost his life * . * *   the question of weekly indemnity would have been entirely distinct from the risk of the insured's death."

The evidence introduced on behalf of defendant shows that it issued three different kinds of policies: the "Business Men's Preferred," the "General Commercial," and the "Farmers' and Mechanics' Special."   The first included business men, professional men and others of a like occupation whose income was $900 or more.   In this class, the indemnity for loss of life was $5,000.   The "General Commercial" department covered a number of occupations in which the total income was at least $750.   This class included clerks.   Deceased belonged to this class, with respect to the character of his employment.   The death payment in this class amounts to $2,000.   The last class included other occupations.   It seems that the three classes referred to had each a separate form of policy, and there was nothing in one policy to indicate that there were any other classes. The policy in the instant case had at the top of the cover the words, "General Commercial;" but there is nothing in the certificate itself referring to the "General Commercial" class, or indicating that there were any other classes.   It is not shown that this classification is made by the constitution or by-laws of the company, but only in the instruc-

tions by the company to its agents, and it does not appear that these instructions were made known to the applicant by the agent, or that he had any knowledge of them. The agent who solicited this insurance did not testify.

We have, perhaps, already gone into this question more fully than was necessary, because of the holding in the second paragraph of the opinion. Without determining this point, it is our conclusion from the whole record that the judgment of the district court ought to be affirmed. It is—*Affirmed.*

GAYNOR, C. J., WEAVER and SALINGER, JJ., concur.

DEEMER, J.—(dissenting.) As the majority opinion is made up to turn upon failure of testimony regarding the untruthfulness of the representations made by the assured with reference to his annual income, I am impelled to dissent from the conclusion reached. I am inclined to agree with the holding that the statement was not a warranty, but a statement or representation made by the assured, material to the issuance of the policy, and that, if made by the assured with knowledge of its falsity, and with intent to deceive, it avoids the policy.

Upon the question as to materiality of the statements, I do not wish to be foreclosed, and I do not understand that the majority make any pronouncement upon that point. It may be that defendant has not sufficiently shown the materiality of the statement, in that it failed to do more than prove its statements and instructions to its agents. I have not had time to sufficiently investigate that point; and, as the majority do not decide it, but place the decision squarely upon the proposition of failure of proof,—that is, that the statement was untrue when made, or was known by the assured to be untrue when he made it,—I go directly to that question.

It was manifestly impossible for the defendant to prove

by direct and positive testimony the amount of the assured's income, unless, perchance, he had made some admission during his lifetime; but that, itself, could not be said to be conclusive, for it would be nothing more than an admission subject to explanation. Defendant did the next best thing. It produced all the testimony available (the assured being deceased) as to the amount of his annual income. It called all who had any knowledge on the subject, and they testified to facts which, it seems to me, were sufficient to take the case to the jury upon the question of the amount of the assured's annual income.

If it be found that this was misrepresented, then the next question is the knowledge of the assured as to the falsity of the statement. The statement was not only as if it were of his own knowledge, but it was of a fact of which he, of all others, knew, to wit: *his* annual income. Having made a direct statement of a fact as of his own knowledge, —a statement regarding a matter of which he was personally cognizant,—a jury might find from the fact that it was untrue; that the assured had knowledge of its falsity. This rule is everywhere affirmed. See *Gate City Land Co. v. Heilman,* 80 Iowa 477; *Goring v. Fitzgerald,* 105 Iowa 507; *Cox Shoe Co. v. Adams,* 105 Iowa 402; *Hubbard v. Weare,* 79 Iowa 678.

These two elements being shown, the intent to deceive may be inferred. See *Boddy v. Henry,* 126 Iowa 31; *Endsley v. Johns,* (Ill.) 12 N. E. 247; *Cole v. Cassidy,* 138 Mass. 437; *Arnold v. Teel,* (Mass.) 64 N. E. 413; *Haven v. Neal,* (Minn.) 45 N. W. 612.

It is agreed, as I understand it, that there is sufficient to show that defendant acted upon the statement, and was induced thereby to issue its policy.

I may say, in conclusion, that, under the holding of *Nelson v. Nederland Life Ins. Co.,* 110 Iowa 600, the parties to this insurance contract made the statements of the

assured material to the issuance of the policy. I am clearly
of opinion that the majority are in error in holding that
there is no testimony sufficient to take the case to a jury on
the question of false and fraudulent representations made
by the assured. This is the reason for my dissent.